# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1782-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Sambath Pal, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(WI Ct. App. 2016 – Unpublished)

| | |
|---|---|
| OPINION FILED: | April 28, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 28, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Rock |
|   JUDGE: | Richard T. Werner |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ROGGENSACK, C. J. concurs, joined by BRADLEY, R. G., J. (opinion filed). |
| | KELLY, J. concurs, joined by ABRAHAMSON, J. and BRADLEY, A. W., J. (opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the defendant-appellant-petitioner there were briefs and oral argument by *Philip J. Brehm*, Janesville.

    For the plaintiff-respondent the cause was argued by *Daniel P. Lennington*, deputy solicitor general, with whom on the brief was *Misha Tseytlin*, solicitor general and *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP1782-CR
(L.C. No. 2014CF766)

STATE OF WISCONSIN            :         IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent,**

   **v.**

**Sambath Pal,**

      **Defendant-Appellant-Petitioner.**

**FILED**

**APR 28, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a summary disposition of the court of appeals, State v. Pal, No. 2015AP1782-CR, unpublished order (Wis. Ct. App. Apr. 8, 2016), which affirmed the Rock County circuit court's[1] judgment of conviction of defendant Sambath Pal ("Pal") and order denying Pal's motions for postconviction relief.

¶2 On April 20, 2014, Pal was involved in a traffic accident when his sport utility vehicle ("SUV") collided with a group of motorcyclists on a highway; two motorcyclists died from

_____
[1] The Honorable Richard T. Werner presided.

the injuries they sustained in the crash. Pal fled the accident scene, but was apprehended by the police a few days later. He eventually pleaded guilty to two counts of hit and run resulting in death, in violation of Wis. Stat. § 346.67(1) (2013-14).[2] The circuit court sentenced Pal to ten years of initial confinement and ten years of extended supervision for each count, with the term of imprisonment for the first count to be served consecutive to the term of imprisonment for the second count.

¶3 Before this court, Pal raises two challenges to his sentence. First, Pal argues that he was unconstitutionally punished for two counts of hit and run resulting in death even though he only committed a single offense, his flight from the scene. This is a multiplicity claim implicating double jeopardy and due process protections guaranteed by the state and federal constitutions. Second, Pal argues that the circuit court erroneously exercised its discretion at sentencing by imposing an unduly harsh sentence. Both the circuit court and the court of appeals rejected these arguments.

¶4 We conclude that Pal committed two offenses, not one, when he fled from the scene of his accident, and that the legislature authorized punishment for each offense. It was therefore not unconstitutional for the circuit court to accept guilty pleas and sentence Pal for both counts of hit and run resulting in death. We further conclude that the circuit court

---

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

2

did not impose an unduly harsh sentence. Accordingly, we affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND

¶5 On April 20, 2014, at around 8:00 p.m., law enforcement officers and emergency responders were dispatched to a traffic accident near Janesville in Rock County, Wisconsin. Witnesses reported that an SUV had swerved into the oncoming traffic lane near a curve in the highway, collided with a group of motorcyclists, and driven off without stopping. Two motorcyclists lay in the middle of the road. The first was found dead; the second was found alive but later succumbed to his injuries. Using debris found at the scene, members of law enforcement were able to determine the likely make and model of the SUV that had caused the accident.

¶6 Pal, the driver of the SUV, never turned himself in. But on April 24, 2014, Pal's father, suspecting Pal's involvement in the accident, notified the Rock County 911 Center that Pal had been driving his father's SUV in Janesville on the date of the accident and that Pal had returned the vehicle damaged. Law enforcement confirmed that the make and model of the SUV owned by Pal's father matched that of the vehicle they were seeking. The damage to the SUV was also consistent with the debris that law enforcement had located at the accident scene.

¶7 The same day a detective spoke with Pal's girlfriend and her mother, both of whom lived in Janesville. Together, their statements indicated that Pal drove a black SUV matching

3

the description of the vehicle involved in the accident; that Pal had been staying at their house in Janesville on April 20, 2014; that Pal had left the house around 7:20 p.m. that night to pick up his girlfriend from work; and that Pal had left his girlfriend's place of work alone[3] around 7:40 p.m. with plans to purchase a bottle of wine and return to his girlfriend's house. It was about a three-minute drive from the scene of the accident to Pal's girlfriend's house.

## II. PROCEDURAL BACKGROUND

¶8 On April 25, 2014, a criminal complaint was filed against Pal in Rock County circuit court charging him with two counts of hit and run resulting in death, one count for each of the deceased motorcyclists, in violation of Wis. Stat. § 346.67(1). On May 16, 2014, an information was filed. On July 31, 2014, Pal pleaded guilty to both counts.

¶9 On October 1, 2014, the circuit court sentenced Pal to ten years of initial confinement and ten years of extended supervision for each count, with the term of imprisonment for the first count to be served consecutive to the term of imprisonment for the second count.[4] On October 3, 2014, a judgment of conviction was entered.

---

[3] Pal's girlfriend claimed she had informed Pal when he arrived at her place of work that night that she was "going to work another shift."

[4] The circuit court also concluded that Pal was not eligible for the Challenge Incarceration Program or the Earned Release Program.

¶10 On May 7, 2015, Pal filed motions for postconviction relief, arguing, as explained above, that the circuit court had erroneously exercised its discretion at sentencing and that the two counts to which he had pleaded guilty were multiplicitous. On August 7, 2015, the circuit court denied the motions on the record following a hearing. On August 11, 2015, the circuit court signed a written order to that effect.

¶11 On August 24, 2015, Pal filed a notice of appeal. On April 8, 2016, the court of appeals summarily affirmed Pal's judgment of conviction and the order denying Pal's motions for postconviction relief. Pal, No. 2015AP1782-CR, unpublished order. On May 2, 2016, Pal filed a petition for review in this court. On October 11, 2016, we granted the petition.

### III. STANDARD OF REVIEW

¶12 Whether the two counts to which Pal pleaded guilty "are multiplicitous in violation of the federal and state constitutions is a question of law subject to our independent review." State v. Ziegler, 2012 WI 73, ¶38, 342 Wis. 2d 256, 816 N.W.2d 238. Examination of this question requires interpretation and application of Wis. Stat. §§ 346.67(1) and 346.74(5), which "present questions of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court." Id., ¶37.

¶13 Finally, "[w]e review a trial court's conclusion that a sentence it imposed was not unduly harsh and unconscionable for an erroneous exercise of discretion." State v. Cummings, 2014 WI 88, ¶45, 357 Wis. 2d 1, 850 N.W.2d 915 (emphasis

5

omitted) (quoting State v. Grindemann, 2002 WI App 106, ¶30, 255 Wis. 2d 632, 648 N.W.2d 507).  Pursuant to this standard, "[w]e will not set aside a discretionary ruling of the trial court if it appears from the record that the court applied the proper legal standards to the facts before it, and through a process of reasoning, reached a result which a reasonable judge could reach."  Id. (quoting Grindemann, 255 Wis. 2d 632, ¶30).

## IV.  ANALYSIS

### A. Whether Pal Can Be Punished for Two Counts of Hit and Run Resulting in Death

¶14  Pal's multiplicity claim is a claim that he received multiple punishments for the same offense in violation of the Double Jeopardy Clause of the United States Constitution[5] and its counterpart in the Wisconsin Constitution.[6]  See Ziegler, 342 Wis. 2d 256, ¶59.  We therefore examine whether the two counts for which Pal was sentenced actually pertain to the commission of a single offense.  See, e.g., State v. Derango, 2000 WI 89, ¶28, 236 Wis. 2d 721, 613 N.W.2d 833.  We must determine whether the circuit court "impos[ed] a greater penalty than the legislature intended."  Id.

---

[5] "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."  U.S. Const. amend. V.

[6] "[N]o person for the same offense may be put twice in jeopardy of punishment . . . ."  Wis. Const. art. I, § 8(1); State v. Davison, 2003 WI 89, ¶18, 263 Wis. 2d 145, 666 N.W.2d 1 ("Our tradition is to view [the state and federal double jeopardy] provisions as identical in scope and purpose.").

¶15 "We review multiplicity claims according to a well-established two-pronged methodology." Ziegler, 342 Wis. 2d 256, ¶60. We first examine "whether the charged offenses are identical in law and fact." State v. Trawitzki, 2001 WI 77, ¶21, 244 Wis. 2d 523, 628 N.W.2d 801; State v. Davison, 2003 WI 89, ¶43, 263 Wis. 2d 145, 666 N.W.2d 1. If we conclude that the offenses are not identical in law and fact, we presume that the legislature authorized multiple punishments. State v. Patterson, 2010 WI 130, ¶15, 329 Wis. 2d 599, 790 N.W.2d 909. This presumption, however, may be rebutted "by clear evidence of contrary legislative intent." Id., ¶17. Under our case law, legislative intent in multiplicity cases is discerned through study of: "(1) all applicable statutory language; (2) the legislative history and context of the statutes; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishments for the conduct." Ziegler, 342 Wis. 2d 256, ¶63. If the presumption is rebutted and this court concludes that the legislature did not authorize multiple punishments, then the defendant "has a legitimate due process claim." Id., ¶62; see also Davison, 263 Wis. 2d 145, ¶33 ("'The same offense' is the sine qua non of double jeopardy.").

¶16 The basic issue before us today was addressed by the court of appeals in State v. Hartnek, 146 Wis. 2d 188, 430 N.W.2d 361 (Ct. App. 1988). The court of appeals concluded that in situations involving "a single event of failing to stop and render aid following an automobile accident," the State may assert multiple counts under Wis. Stat. § 346.67 if there are

7

multiple victims. <u>Hartnek</u>, 146 Wis. 2d at 191. Pal agrees that "[t]he issue in <u>Hartnek</u> was essentially identical to the issue raised by [Pal] in this appeal," but urges us to overrule that case.

¶17 We proceed to analyze Pal's claim.[7] First, we conclude that the two offenses for which Pal was sentenced are not identical in fact. Second, we conclude that Pal has not rebutted the presumption that the legislature authorized punishment for each offense. Consequently, it was not unconstitutional for the circuit court to accept guilty pleas and sentence Pal for both counts of hit and run resulting in death.

¶18 We begin by setting out the language of the relevant statutes. Wisconsin Stat. § 346.67(1) provides:

> The operator of any vehicle involved in an accident resulting in injury to or death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until the operator has fulfilled the following requirements:
>
> (a) The operator shall give his or her name, address and the registration number of the vehicle he or she is driving to the person struck or to the

---

[7] On direct appeal, "a guilty plea relinquishes the right to assert a multiplicity claim when the claim cannot be resolved on the record." <u>State v. Kelty</u>, 2006 WI 101, ¶2, 294 Wis. 2d 62, 716 N.W.2d 886. We agree with Pal that we can resolve his claim on the basis of the facts in the record.

operator or occupant of or person attending any vehicle collided with; and

　　(b) The operator shall, upon request and if available, exhibit his or her operator's license to the person struck or to the operator or occupant of or person attending any vehicle collided with; and

　　(c) The operator shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

Wis. Stat. § 346.67(1).[8]　Wisconsin Stat. § 346.74(5) provides the applicable penalties:

　　Any person violating any provision of s. 346.67(1):

　　(a) Shall be fined not less than $300 nor more than $1,000 or imprisoned not more than 6 months or both if the accident did not involve death or injury to a person.

　　(b) May be fined not more than $10,000 or imprisoned for not more than 9 months or both if the accident involved injury to a person but the person did not suffer great bodily harm.

　　(c) Is guilty of a Class E felony if the accident involved injury to a person and the person suffered great bodily harm.

　　(d) Is guilty of a Class D felony if the accident involved death to a person.

---

[8] Shortly before oral argument in this case, Pal brought to our attention that the legislature recently amended Wis. Stat. § 346.67.　See 2015 Wis. Act 319.　Neither party contends that the new version of the statute is applicable.　Nor do the parties argue that the revisions overruled State v. Hartnek, 146 Wis. 2d 188, 430 N.W.2d 361 (Ct. App. 1988).

9

(e) Is guilty of a felony if the accident involved death or injury to a person.

Wis. Stat. § 346.74(5).

¶19 The State concedes that the counts charged against Pal are identical in law because they derive from violations of the same statute. See, e.g., State v. Anderson, 219 Wis. 2d 739, 747, 580 N.W.2d 329 (1998); Ziegler, 342 Wis. 2d 256, ¶66. We therefore must determine whether the offenses are identical in fact, inquiring into whether "the acts . . . committed are sufficiently different in fact to demonstrate that separate crimes have been committed." Ziegler, 342 Wis. 2d 256, ¶60.

¶20 Pal argues that "each count . . . in this case charges exactly the same offense of leaving the scene of an accident causing the death of any person." We do not agree. The State did not simply charge Pal for his failure to stop his vehicle at the scene of the accident; it charged Pal for his failure to stop his vehicle at the scene of the accident until he had fulfilled his statutory obligations of providing information and assistance to each of the two victims he had hit with his vehicle. Because Pal did not perform his statutorily-imposed duties with regard to each of two victims, the State charged Pal with two violations of the statute.[9]

---

[9] We note that, as this case involves two motorcyclists, one could perhaps argue that this case involved more than one "scene of the accident" under Wis. Stat. § 346.67(1). This argument, however, is not one that was made by the parties, either in briefing or at oral argument, and we decline to address it.

10

¶21  The first count in the information filed in this case reads in part:

> [Pal] . . . being the operator of a vehicle involved in an accident resulting in death to [D.J.], did fail to immediately stop his own vehicle at the scene of said accident, or as close thereto as possible, and failed to remain at the scene of said accident until he fulfilled the following requirements, to-wit: provide name, address and the registration number of the vehicle he is driving to the person struck or to the operator or occupant of or person attending any vehicle collided with; upon request and if available, exhibit his operator's license to the person struck or to the operator or occupant of or person attending any vehicle collided with; or render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person . . . .

(Emphasis added.)   The second count repeats these allegations, substituting the second victim's name for the first victim's name.   The State's prosecutorial approach in this case is consistent with our previous conclusion in State v. Rabe that "where the crime is against persons rather than property, there are, as a general rule, as many offenses as individuals affected."   State v. Rabe, 96 Wis. 2d 48, 68, 291 N.W.2d 809 (1980).

¶22  "[I]f the State were put to their proof" in this case, they would have to establish that Pal had failed to complete his statutory responsibilities with regard to each victim.   State v. Richter, 189 Wis. 2d 105, 109, 525 N.W.2d 168 (Ct. App. 1994). Thus, we conclude that the offenses charged are not identical in

11

fact. See, e.g., Rabe, 96 Wis. 2d at 53, 62-68 (four counts of homicide by intoxicated use of a vehicle were not identical in fact in case wherein defendant's vehicle collided with a second vehicle and two occupants in each car died); c.f., e.g., Richter, 189 Wis. 2d at 107-110 (three counts of bail jumping were not identical in fact in case wherein defendant violated, with a single phone call, three distinct bonds in three distinct cases).

¶23 Because the two counts of hit and run resulting in death are not identical in fact, we presume that the legislature authorized punishment for each offense. Patterson, 329 Wis. 2d 599, ¶15. Pal's attempts to rebut that presumption fail. With regard to the text of the statute, Pal points to the repeated use of the word "any" in Wis. Stat. § 346.67(1) as support for his claim that once "any" person is injured or killed in an accident——regardless of the actual number of victims——Wis. Stat. § 346.67(1) is triggered and a defendant can be penalized only once for leaving that single qualifying accident scene. See, e.g., § 346.67(1) (applying to "[t]he operator of any vehicle involved in an accident resulting in injury to or death of any person or in damage to a vehicle which is driven or attended by any person" (emphases added)).

¶24 Pal's argument fails when viewed in light of the text of the statute as a whole. Under Wis. Stat. § 346.67(1), Pal owed a distinct set of duties to each of the two victims at the accident scene he fled. Although stopping one's vehicle at the scene of the accident is certainly one of the obligations that

12

§ 346.67(1) imposes, that requirement is manifestly in service of the statute's true focus: the operator's obligation to remain at the scene of the accident until the operator has fulfilled each of the enumerated statutory obligations owed to <u>specified persons at the scene</u>. To take one example, the statute requires certain vehicle operators to "remain at the scene of the accident" in order to

> render to <u>any person injured in such accident</u> reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.

Wis. Stat. § 346.67(1)(c) (emphasis added). Thus "a person who renders aid to three out of four injured persons is still exposed to liability under the statute." <u>Hartnek</u>, 146 Wis. 2d at 194 (citing <u>State v. Lloyd</u>, 104 Wis. 2d 49, 62-63, 310 N.W.2d 617 (Ct. App. 1981)). Section 346.67(1)'s statement that it applies to "an accident resulting in injury to or death of <u>any person</u> or in damage to a vehicle which is driven or attended by <u>any person</u>" simply establishes the minimum threshold at which the statute is triggered; it does not limit the number of beneficiaries of the duties the statute imposes on specified vehicle operators. § 346.67(1) (emphases added). And, as stated above, "where the crime is against persons rather than property, there are, as a general rule, as many offenses as individuals affected." <u>Rabe</u>, 96 Wis. 2d at 68. Given this rule, and the statute's clear imposition of duties with regard

13

to each of the victims at the accident scene in this case, it is reasonable to presume, as we do, that the legislature authorized multiple punishments under § 346.67(1).

¶25 We add to this analysis the observation that "[m]ultiple victim accidents are not so rare that we can say the legislature did not take them into consideration when drafting the statute. Had the legislature intended that only one penalty could be imposed per accident, it could have more clearly done so." Hartnek, 146 Wis. 2d at 194. Nothing in Wis. Stat. § 346.67(1) or Wis. Stat. § 346.74(5)[10] persuades us that the legislature prohibited multiple counts under the circumstances present in this case.

¶26 Next, Pal states that "the legislative history and the context of the statu[t]e" do not provide "relevant guidance either way." The State somewhat similarly asserts that

---

[10] Pal suggests that the penalties provided in Wis. Stat. § 346.74(5) are graduated based on the greatest degree of harm sustained by any victim in a particular accident; that is, that "[t]he applicable penalty will presumably be based on the most seriously injured person." See, e.g., § 346.74(5) ("Any person violating any provision of s. 346.67 (1): . . . (d) Is guilty of a Class D felony if the accident involved death to a person." (emphasis added)). But see Hartnek, 146 Wis. 2d at 194-95 (concluding that "a multiple victim accident could invoke several of the differing penalties of sec. 346.74(5)").

Even if Pal were correct, this would not dictate that multiple counts are prohibited under the statute. It might instead simply mean that the appropriate penalty for each of multiple counts must be based on the penalty applicable with regard to "the most seriously injured person." We do not express an opinion on the question; we merely observe that Pal's argument is not determinative here.

14

"[n]othing in the legislative history indicates that the Legislature intended to limit the number of charges that may be filed resulting from a multi-victim hit-and-run accident." Given that Pal bears the burden of rebutting the presumption, see Ziegler, 342 Wis. 2d 256, ¶62, and that nothing of a conclusive nature suggests itself to us with regard to this factor, we will not construct an argument for him. See, e.g., Indus. Risk Insurers v. Am. Eng'g Testing, Inc., 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments.").

¶27 With regard to the nature of the conduct proscribed by Wis. Stat. § 346.67(1), Pal again contends that "[t]he gravamen of the offense is not the killing of a person, but the flight from the scene." We reiterate that the statute is patently concerned with more than simply flight from the scene of an accident. Instead, the statute prohibits flight until the vehicle operator has fulfilled his or her duties with regard to specified persons at the scene. Indeed, it is at least conceivable that a vehicle operator could, consistent with the statute, freely leave an accident scene in a matter of minutes if he or she manages to complete the statutorily-mandated tasks in that amount of time. See § 346.67(1). Given that the statute pertains to a vehicle operator's duties to certain individuals at an accident scene, it makes sense to allow punishment for violations of duties to separate individuals. "Each offense caused harm that the other offense did not." Anderson, 219 Wis. 2d at 755. For the same reason, we see

15

nothing inappropriate about punishing Pal for each instance of failing to aid one of the victims in this case.  See Davison, 263 Wis. 2d 145, ¶98 (noting that "[o]ften in our multiplicity analyses, consideration of the appropriateness of multiple punishments is informed by our conclusions regarding the nature of the proscribed conduct").[11]

¶28 Our analysis leads us to a single conclusion: the legislature authorized the State to charge multiple counts of the offense of hit and run resulting in death in cases involving multiple victims.  We therefore have no need to apply "the 'rule of lenity' and the general rule subjecting penal statutes to strict construction so as to safeguard a defendant's rights," State v. Kittilstad, 231 Wis. 2d 245, 266-67, 603 N.W.2d 732 (1999), as Pal urges us to do.  See, e.g., Callanan v. United States, 364 U.S. 587, 596 (1961) ("The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.  That is not the function of the judiciary."); Zarnott v. Timken-Detroit Axle Co., 244 Wis. 596, 600, 13 N.W.2d 53 (1944) ("[T]he rule of

---

[11] Wisconsin Stat. § 346.67(1) enumerates a number of duties, some contained within the same paragraph.  Additionally, a given accident could involve varying numbers of victims.  One could therefore imagine many complex hypotheticals posing questions about how many violations could validly be charged in a given case.  We decline to weigh in on these types of hypotheticals, however, and instead simply conclude that what the State charged in this specific case is permissible.

16

strict construction [of penal statutes] is not violated by taking the common-sense view of the statute as a whole and giving effect to the object of the legislature, if a reasonable construction of the words permits it.").

¶29 In our system, "the substantive power to prescribe crimes and determine punishments is vested with the legislature." Davison, 263 Wis. 2d 145, ¶31 (quoting Ohio v. Johnson, 467 U.S. 493, 499 (1984)). All that we determine today is that the legislature authorized the sentence meted out below. The legislature is free to clarify the statute in the future if it wishes. Further,

> the fact that multiple counts may be charged for multiple deaths does not mean that in all such cases multiple charges will be filed or that, upon conviction, separate and consecutive sentences will be imposed. Such decisions are subject to both prosecutorial charging discretion and judicial sentencing discretion.

9 Christine M. Wiseman & Michael Tobin, Wisconsin Practice Series: Criminal Practice & Procedure § 1:23 (2d ed.) (footnote omitted). This latter safeguard, judicial sentencing discretion, is the subject of Pal's second challenge.

### B. Whether Pal's Sentence Is Unduly Harsh

¶30 Pal contends that his sentence is unduly harsh. We have said that "[a] sentence is unduly harsh or unconscionable 'only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'"

17

Cummings, 357 Wis. 2d 1, ¶72 (quoting Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975)).

¶31 Pal's sentence was less than the statutory maximum. He received two consecutive 20-year terms of imprisonment, with each term consisting of ten years of initial confinement and ten years of extended supervision. However, he could have received two consecutive 25-year terms of imprisonment, with each term consisting of 15 years of initial confinement and ten years of extended supervision. See Wis. Stat. §§ 346.74(5)(d); 939.50(3)(d); 973.01(2)(b)4. and (2)(d)3.

¶32 We cannot conclude that the circuit court erred in rejecting Pal's claim that its sentence was unduly harsh. In sentencing Pal, the circuit court properly considered "the gravity of the offense, the character of the defendant, and the need to protect the public." State v. Harris, 2010 WI 79, ¶28, 326 Wis. 2d 685, 786 N.W.2d 409 (citing State v. Harris, 119 Wis. 2d 612, 623, 350 N.W.2d 633 (1984)).

¶33 Remarking that it could not "say enough about the seriousness of these offenses," the circuit court explained that it was "giv[ing] the greatest amount of weight" to that factor. The circuit court discussed in detail Pal's actions in the hours and days after the accident which, in the circuit court's view, demonstrated Pal's lack of remorse and failure to take responsibility for his actions.

¶34 In particular, the circuit court noted the following relevant pieces of information, among others: that following the accident (while two individuals lay dead or dying on the

18

highway) Pal returned to his girlfriend's house where he "drank some beer and . . . talked about sports and other things" with his girlfriend's stepfather; that Pal did not confess to what he had done when questioned by his girlfriend and his father; that Pal never turned himself in; that a search of Pal's phone "indicated . . . web page searches of many pages, of many subjects about how to avoid being caught for a hit and run, how to repair a vehicle, how to hide a vehicle, what are the penalties"; that after his arrest, while in jail, Pal "tried to talk to [sic] [his] girlfriend into deleting some information"; and that "[t]he agent that wrote the [presentence investigation] report" viewed Pal's "claims of remorse [as] somewhat suspect." The court stated, "I . . . believe I must impose a sentence that does not unduly depreciate the seriousness of these offenses and a sentence that has a punitive component as well."

¶35 Pal discusses a number of matters relating to the circumstances of the accident below, the nature of the crime itself, the recommendations of the State and of the author of the presentence investigation report, and his own personal background in support of his argument that a lighter sentence is appropriate. He explains that he "expressed remorse for his conduct, not [by] mere words, but by waiving his right to a trial and pleading to the charges, as alleged." But these arguments are generally for the circuit court, not this court, to consider. See, e.g., Harris, 119 Wis. 2d at 622 ("We have acknowledged our reluctance to interfere with a trial court's

19

sentence, because it has a great advantage in considering the relevant factors and the demeanor of the defendant.").

¶36 In sum, the circuit court imposed a sentence within the statutory maximum after it had properly considered the relevant factors and had provided Pal with a thorough explanation of the reasons supporting its decision. The circuit court's actions were not unduly harsh and unconscionable.

¶37 Finally, Pal briefly argues that "[t]he focus by the trial court on the flight as an aggravating factor was misplaced" because the flight "was not an aggravating factor; it was the crime." The circuit court below rejected this argument postconviction, explaining that what it had considered aggravating was not Pal's flight but his "course of conduct that went well beyond the initial flight or . . . not immediately stopping." Our review of the sentencing transcript leaves us unable to disagree with this characterization.

¶38 Pal similarly contends that "the remarks of the trial court indicate it considered the deaths an aggravating factor justifying a harsh penalty," even though "[t]he death of a person at the scene of a hit and run accident is what propelled the offense to a Class D felony" in the first place. Again, we do not accept Pal's interpretation of the sentencing transcript. The circuit court undoubtedly viewed the deaths of the two victims in this case as relevant to its sentencing decision, but that was because the deaths pertained to "the gravity of the offense," undoubtedly a proper concern for the court. See

<u>Harris</u>, 326 Wis. 2d 685, ¶28. We uphold the sentence the circuit court imposed in this case.

## V. CONCLUSION

¶39 This case arose because Pal abandoned two dead or dying motorcyclists on the road following his vehicle accident. We conclude that Pal committed two offenses, not one, when he fled from the scene of his accident, and that the legislature authorized punishment for each offense. It was therefore not unconstitutional for the circuit court to accept guilty pleas and sentence Pal for both counts of hit and run resulting in death. We further conclude that the circuit court did not impose an unduly harsh sentence. Accordingly, we affirm the decision of the court of appeals.


*By the Court.*—The decision of the court of appeals is affirmed.

¶40 PATIENCE DRAKE ROGGENSACK, C.J. *(concurring).* The Majority opinion correctly applies well-established Wisconsin law, and therefore I join the opinion in full. I write separately to explain that there is an alternate way in which this case could have been analyzed. In so doing, I hope to encourage future parties who raise multiplicity challenges that are grounded in multiple charges under a single statute to address their challenges as "unit of prosecution" claims.

¶41 "The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and its parallel provision in the Wisconsin Constitution, Article I, Section 8(1), prohibit multiple punishments for the same offense." State v. Ziegler, 2012 WI 73, ¶59, 342 Wis. 2d 256, 816 N.W.2d 238. The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the *same offense*." State v. Davison, 2003 WI 89, ¶19, 263 Wis. 2d 145, 666 N.W.2d 1 (emphasis in original)(internal quotations omitted).

¶42 The last protection is commonly referred to as a "multiplicity" claim. "When a defendant is charged in more than one count for a single offense, the counts are deemed impermissibly multiplicitous." Ziegler, 342 Wis. 2d 256, ¶59. Multiplicity claims may arise when multiple counts are charged under the same statute for what is asserted to be the same conduct or when multiple counts are charged under different statutes for what is asserted to be the same conduct. In either

1

case, their resolution will turn on legislative intent, in part, because the legislature is constitutionally delegated the substantive power to delineate and define crimes. Davison, 263 Wis. 2d 145, ¶31.

¶43 Wisconsin courts have analyzed both types of multiplicity claims using a two-step test. Id., ¶43. "First, the court determines whether the offenses are identical in law and fact using the 'elements-only' test set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932)." Ziegler, 342 Wis. 2d 256, ¶60. "The results of the 'elements-only' test determine the presumption under which we analyze the second prong of our methodology." Id., ¶61 (citation omitted). "If the offenses are identical in law and fact, a presumption arises that the legislature did not intend to authorize cumulative punishments." Id. (citation omitted). "Conversely, if the offenses are different in law or fact, the presumption is that the legislature intended to permit cumulative punishments." Id., ¶62. See also Davison, 263 Wis. 2d 145, ¶43 ("First, the court determines whether the charged offenses are identical in law and fact using the Blockburger test.").

¶44 The Blockburger test was derived from the Court's analysis of the proper way to address multiple convictions that arose from under different statutory provisions. Blockburger, 284 U.S. at 304; see also Garrett v. United States, 471 U.S. 773, 778 (1985) ("Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature-in this case Congress-intended

2

that each violation be a separate offense."). Therefore, Blockburger is not directly on point for instances in which a defendant is convicted under a single statute. However, Wisconsin courts have applied the two-step multiplicity test, and therefore the Blockburger test, to these situations. Specifically, we have used it to analyze situations in which a defendant receives multiple convictions under a single statute. See State v. Rabe, 96 Wis. 2d 48, 64-65, 291 N.W.2d 809 (1980); State v. Richter, 189 Wis. 2d 105, 108-09, 525 N.W.2d 168 (Ct. App. 1994) and other cases discussed below.

¶45 However, the unit of prosecution analysis is also applicable when multiple charges are made under the same statute. "The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses." Woellhaf v. People, 105 P.3d 209, 215 (Colo. 2005). In unit of prosecution cases, Wisconsin courts routinely apply the above-mentioned Blockburger test to determine if a defendant's convictions were multiplicitous. See, e.g., State v. Multaler, 2002 WI 35, ¶59, 252 Wis. 2d 54, 643 N.W.2d 437 ("Having determined that the charges are different in fact, we turn to examine the legislature's intent regarding the allowable unit of prosecution."); Rabe, 96 Wis. 2d at 64-65; Richter, 189 Wis. 2d at 108-09 ("In order to determine whether the three counts of bail jumping were multiplicitous, we must apply a two-pronged test to the facts of this case . . . ."); State v. Hartnek, 146 Wis. 2d 188, 192, 430 N.W.2d 361 (Ct. App. 1988).

3

However, in the context of multiple counts made under the same statute, the application of the Blockburger test may not work as well as Wisconsin courts have assumed.

¶46 For example, the first prong of Wisconsin's multiplicity analysis is potentially illusory when a defendant's convictions are for multiple violations of a single statute. "When a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied." State v. Adel, 965 P.2d 1072, 1074 (Wash. 1998). "Two convictions for violating the same statute will always be the same in law, but they will never be the same in fact. In charging two violations of the same statute, the prosecutor will always attempt to distinguish the two charges by dividing the evidence supporting each charge into distinct segments." Id.[1]

---

[1] For a more thorough explanation of why Wisconsin's two-prong multiplicity analysis may be reconsidered in unit of prosecution cases, see Michelle A. Leslie, Note, State v. Grayson, Clouding the Already Murky Waters of Unit of Prosecution Analysis in Wisconsin, 1993 Wis. L. Rev. 811, 824-25 ("The first prong of the Rabe test, 'identical in law and in fact,' is not useful in the continuing offense, unit of prosecution context. The identical in law portion is always satisfied and therefore never determinative, since each charge is brought under the identical statutory provision. The identical in fact portion is equally uninformative, but in a more subtle manner. The prosecutor, in deciding on the challenged unit of prosecution, must divide the continuing conduct into distinct segments (usually temporal segments). Implicit in that division, however, are different factual contexts, controlled solely by the prosecutor's unit of prosecution choice. Thus, identical in fact will never be satisfied.").

4

¶47 Perhaps for this reason, other courts, including the United States Supreme Court, generally do not apply the Blockburger analysis to multiplicity challenges based on multiple charges under the same statute.[2] See generally Sanabria v. United States, 437 U.S. 54, 70 (1978) ("Because only a single violation of a single statute is at issue here, we do not analyze this case under the so-called 'same evidence' test, which is frequently used to determine whether a single transaction may give rise to separate prosecutions, convictions, and/or punishments under separate statutes." (citing Blockburger, 284 U.S. 299 (1932)). For example, the Court of Criminal Appeals of Texas stated: "Both parties' arguments are predicated on the assumption that the proper analysis includes the application of the Blockburger test . . . . However, we employ that analysis only when the charged conduct involves multiple offenses in different statutory provisions that are the result of a single course of conduct." Loving v. State, 401 S.W.3d 642, 645 (Tex. Crim. App. 2013); see also State v. Smith, 436 S.W.3d 751, 768 (Tenn. 2014) ("Generally, we do not apply

---

[2] The Supreme Court's decision in Ladner v. United States, 358 U.S. 169 (1958) is illustrative. In Ladner, the defendant was convicted "of assaulting two federal officers with a deadly weapon" in violation of a single statute. Id. at 170. The defendant received separate convictions for each officer that was harmed. Id. at 170-71. The Court had to address whether "the wounding of two federal officers by the single discharge of a shotgun would constitute a separate offense against each officer under the statute." Id. at 171. The Court did not apply the Blockburger analysis; instead, the Court focused solely on the text of the statute. Id. at 172.

5

the Blockburger test when addressing a unit-of-prosecution claim.").

¶48 Instead, "[w]here two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the Blockburger test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute." United States v. Weathers, 186 F.3d 948, 952 (D.C. Cir. 1999). Stated otherwise, a court's inquiry becomes "what 'unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute." Adel, 965 P.2d at 1074 (citations omitted); see also State v. Thompson, 200 P.3d 22, 28 (Kan. 2009) ("In a unit of prosecution case, the court asks how the legislature has defined the scope of conduct composing one violation of a statute. Under this test, the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution."); Loving, 401 S.W.3d at 645 (reasoning, "whether the Legislature intended for the separate statutory subsections in a single statute to constitute distinct offenses" is the question); State v. Ravell, 922 A.2d 685, 689 (N.H. 2007) (Duggan, J., dissenting) ("Where, as here, a defendant asserts a double jeopardy violation, arguing that he is being punished multiple times under the same statute for the same offense, courts must inquire what 'unit of prosecution' was intended by the legislature as the punishable act.").

6

¶49 Therefore, in multiplicity challenges grounded in multiple charges under a single statute, courts interpret the statute at issue to determine if the legislature authorized multiple convictions.

¶50 In the present case, Pal alleges that he was impermissibly charged with two violations of a single statute. Accordingly, this case could be framed as a unit of prosecution case. And, as discussed above, under a unit of prosecution analysis, the sole question would be whether the legislature intended to authorize multiple punishments through a single statute.

¶51 However, as the Majority opinion correctly notes, the statute at issue in the present case is designed to confer a duty towards each individual harmed by a driver's actions.[3] And, as a result, the legislature authorized the unit of prosecution to be one conviction for each victim.

¶52 Because the Majority opinion proceeds under well-established Wisconsin law, I join the Majority opinion in full. I respectfully concur in order to encourage future parties to consider a unit of prosecution analysis for multiplicity challenges based on multiple charges under a single statute.

¶53 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

---

[3] Maj. Op., ¶24.

7

¶54 DANIEL KELLY, J. *(concurring).* I concur in the mandate because there were two accidents, one following immediately after the other. I do not join the court's opinion, however, because its reasoning could be understood to allow, in a single accident with a single victim, a separate charge for each paragraph of Wis. Stat. § 346.67(1)——a result that I think would be improper.

¶55 For the foregoing reasons, I concur.

¶56 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and ANN WALSH BRADLEY join this concurrence.

1