COURT OF APPEALS
DECISION
DATED AND FILED

December 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1908**

STATE OF WISCONSIN

Cir. Ct. No. 2024PR37

IN COURT OF APPEALS
DISTRICT IV

---

IN THE ESTATE OF DIANE L. NORTH:

STERLING L. NORTH,

    PLAINTIFF-APPELLANT,

  V.

ESTATE OF WILLIAM JAMES NORTH II,

    CREDITOR-RESPONDENT,

FIRST NATIONAL BANK OF OMAHA, DISCOVER BANK,
U.S. BANK NATIONAL ASSOCIATION AND
GUNDERSON FUNERAL HOME,

    CREDITORS.

---

       APPEAL from an order of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Affirmed.*

       Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Sterling L. North appeals an order in a probate case following the deaths of his parents, William James North II and Diane L. North, within 120 hours of one another.  During the administration of Diane's estate, the circuit court issued an order determining that the 120-hour rule of survival in WIS. STAT. § 854.03 (2023-24) applies and that, as a result, William's estate and Diane's estate each own half of the homestead that the couple had owned during their lives as survivorship marital property ("the North homestead" or "the homestead").[1]  Sterling appeals that order,[2] arguing that two exceptions to the 120-hour rule apply, rendering the 120-hour rule inapplicable, such that Diane's estate owns the homestead in full.  For the reasons stated below, we reject Sterling's arguments and affirm.

## BACKGROUND

¶2      At time of their deaths, William and Diane were married.  They had one child together, Sterling.  William also had two children before he married Diane: William North III and Sheree Donaldson.  William and Diane owned the North homestead as survivorship marital property, which meant that upon the death of either William or Diane, the ownership rights of the deceased spouse would transfer to the surviving spouse.  *See* WIS. STAT. § 766.60(5).

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.  Separately, because William North II, Diane North, and Sterling North share a surname, for convenience we refer to them by their first names.

[2] Sterling petitioned for leave to appeal the circuit court's nonfinal order pursuant to WIS. STAT. § 808.03(2), and we granted the petition.

¶3     Diane died in a nursing home in January 2024. On the same day, after William could not be reached with news of Diane's death, police found William dead at the North homestead. It was determined that Diane and William died within 120 hours of each other, with William predeceasing Diane.

¶4     William died intestate; Diane died testate. Diane's will devised her property to William if he survived her, but if not, her will devised her property to Sterling.

¶5     Sterling petitioned for the informal administration of Diane's estate and was appointed as personal representative of Diane's estate, and Diane's will was admitted to probate.[3] Donaldson petitioned for formal administration of William's estate and was appointed personal representative of William's estate.

¶6     During the proceedings in this case regarding the administration of Diane's estate, Sterling and Donaldson disputed whether the 120-hour rule in WIS. STAT. § 854.03 applies to the North homestead and whether William's estate has an interest in the homestead.[4] Donaldson, on behalf of William's estate, filed a

_____

[3] After the filing of Sterling's petition for leave to appeal, the circuit court ordered that Sterling's powers as personal representative be suspended.

[4] WISCONSIN STAT. § 854.03 is titled, "Requirement of survival by 120 hours." Section 854.03 includes several subsections applying this 120-hour requirement in different contexts, as well as a list of exceptions that apply to § 854.03 as a whole. In arguing before the circuit court that the 120-hour rule applies, Donaldson did not specify which subdivision of § 854.03 she argued applies. The specific subsection of § 854.03 that the circuit court concluded applies states that, subject to exceptions, "if property is transferred under a governing instrument that establishes 2 or more co-owners with right of survivorship, and if at least one of the co-owners did not survive the others by at least 120 hours, the property is transferred to the co-owners in proportion to their ownership interests." § 854.03(2)(b). When we refer to the 120-hour rule, we refer to the general requirement in § 854.03, and we specify when we refer to a specific subsection of § 854.03.

claim against Diane's estate for half of the North homestead. Sterling recorded with the register of deeds a termination of William's interest in the homestead.

¶7 Donaldson argued that the 120-hour rule in WIS. STAT. § 854.03 applies. Under the 120-hour rule, which we discuss in more detail below, because Diane did not survive William by more than 120 hours, half of the North homestead transfers to William's estate, and the other half transfers to Diane's estate. *See* § 854.03(2). That means that the half of the homestead that transfers to William's estate is to be divided equally among William's three children, including Sterling, consistent with intestate laws, *see* WIS. STAT. § 852.01(1)(b), and the half of the homestead that transfers to Diane's estate is to be distributed to Sterling, consistent with Diane's will.

¶8 Sterling argued that two exceptions to the 120-hour rule apply. As a result, Sterling argued that, because William died before Diane, the North homestead transfers to Diane upon William's death, and that after Diane's death, the entire homestead transfers to Sterling consistent with Diane's will.

¶9 The circuit court determined that the 120-hour rule applies to the North homestead under WIS. STAT. § 854.03(2)(b), and that no exceptions render the rule inapplicable. Based on this conclusion, the court ordered that Diane's estate and William's estate each own half of the North homestead, and the court declared void the termination of William's interest in the North homestead that Sterling had recorded with the register of deeds. Sterling appeals.

## DISCUSSION

¶10 The parties dispute the interpretation and application of the 120-hour rule in WIS. STAT. § 854.03. We review the interpretation and application of

statutes de novo.  *State v. Pal*, 2017 WI 44, ¶12, 374 Wis. 2d 759, 893 N.W.2d 848.

¶11     As noted, the circuit court determined that the 120-hour rule in WIS. STAT. § 854.03(2) applies to the North homestead.  Section 854.03(2)(b) states that, subject to exceptions, "if property is transferred under a governing instrument that establishes 2 or more co-owners with right of survivorship, and if at least one of the co-owners did not survive the others by at least 120 hours, the property is transferred to the co-owners in proportion to their ownership interests." Section 854.03(2)(a) defines "co-owners with right of survivorship" as including owners of survivorship marital property.  Here, it is undisputed that, at the time of their deaths, William and Diane owned the North homestead as survivorship marital property.  *See* WIS. STAT. § 766.60(5)(a) ("On the death of a spouse, the ownership rights of that spouse in [survivorship marital] property vest solely in the surviving spouse by nontestamentary disposition at death.").

¶12     Sterling argues that two exceptions to the 120-hour rule apply: WIS. STAT. § 854.03(5)(am)2. and 7.  Addressing each in turn, we conclude that neither exception applies.[5]

---

[5] Aside from arguing that these exceptions apply, Sterling does not otherwise challenge the circuit court's conclusion that WIS. STAT. § 854.03(2) applies to the North homestead.  In his appellant's brief, Sterling expresses the view that the 120-hour rule would apply to the North homestead under a different subsection, § 854.03(3), were it not for the exceptions that Sterling argues applies.  *See* § 854.03(3) ("[I]f a husband and wife die leaving marital property and it is not established that one survived the other by at least 120 hours, 50 percent of the marital property shall be distributed as if it were the husband's individual property and the husband had survived, and 50 percent of the marital property shall be distributed as if it were the wife's individual property and the wife had survived.").  But Sterling does not develop an argument disputing the court's conclusion that § 854.03(2) is the pertinent subsection at issue.  Rather, the only arguments that Sterling develops on appeal regard the exceptions to the 120-hour rule, and he does not dispute that if these exceptions do not apply, then the 120-hour rule does apply.  And, under either subsection, the result is the same: half of the North homestead transfers to William's

(continued)

### I. *Exception in* WIS. STAT. *§ 854.03(5)(am)2.*

¶13 WISCONSIN STAT. § 854.03(5)(am)2. states that the 120-hour rule does not apply if "[t]he statute or governing instrument indicates that the individual is not required to survive an event by any specified period." Sterling argues that this exception applies because two statutes "indicate[] that the individual is not required to survive an event by any specified period." First, he relies on WIS. STAT. § 766.60(5)(a), which allows for the nontestamentary disposition of survivorship marital property such as the North homestead and provides: "If the words 'survivorship marital property' are used … the marital property so held is survivorship marital property. On the death of a spouse, the ownership rights of that spouse in the property vest solely in the surviving spouse by nontestamentary disposition at death." Second, Sterling relies on WIS. STAT. § 766.01(6), which defines "disposition at death," for purposes of WIS. STAT. ch. 766, as a "transfer of property … that takes effect at the transferor's death." Sterling argues that, because survivorship marital property is transferred by "nontestamentary disposition at death" under § 766.60(5)(a), and because "disposition at death" is defined as taking effect "at the transferor's death," these statutes "indicate[] that the individual is not required to survive an event by any specified period," and that the exception from § 854.03(5)(am)2. thus applies.

---

estate, and the other half to Diane's estate. Accordingly, we need not address whether the court properly determined that the 120-hour rule applies under § 854.03(2), as opposed to subsection (3).

Relatedly, the circuit court also determined that, under WIS. STAT. § 854.03(3), the 120-hour rule applies to William and Diane's other marital property, and ordered that William's estate and Diane's estate must equally split that property. Because Sterling challenges the court's decision only as it relates to the North homestead, we limit our review to the homestead issue.

¶14     The problem with this argument is that, pursuant to the unambiguous language of WIS. STAT. § 854.03(2), the 120-hour rule applies when "property is transferred under a governing instrument that establishes 2 or more co-owners with right of survivorship," and the term "co-owners with right of survivorship" is explicitly defined as including "owners of survivorship marital property." Under Sterling's reading of § 854.03(2), that subsection would state that the 120-hour rule applies specifically to survivorship marital property, but the exception in § 854.03(5)(am)2. would then categorically except survivorship marital property from the rule. We reject Sterling's interpretation because it would render a nullity the language from § 854.03(2) stating that the 120-hour rule applies to survivorship marital property. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."); *see also Fred Rueping Leather Co. v. City of Fond Du Lac*, 99 Wis. 2d 1, 6, 298 N.W.2d 227 (Ct. App. 1980) (rejecting an interpretation of a statute because it "would effectively nullify the existence of [the statute] in that it would render it superfluous" and "[b]asic rules of statutory interpretation forbid this result"); *Kalal*, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole.").

*II. Exception in WIS. STAT. § 854.03(5)(am)7.*

¶15     WISCONSIN STAT. § 854.03(5)(am)7. states that the 120-hour rule does not apply if "[t]he statute or governing instrument specifies that this statute, or one similar to it, does not apply." In arguing that the exception in § 854.03(5)(am)7. applies, Sterling relies on WIS. STAT. § 766.58, which governs marital property agreements, and specifically on § 766.58(3m), which states that "[WIS. STAT. ch.] 854 applies to transfers at death under a marital property

agreement." He contrasts this language in § 766.58(3m) with WIS. STAT. § 766.60, which, as noted, addresses survivorship marital property, and which contains no analogous provision stating that ch. 854 applies to transfers at death of survivorship marital property. He argues that, because the legislature specified in § 766.58 that ch. 854 applies to transfers at death under marital property agreements, it is significant that the legislature did not make an analogous specification in § 766.60 regarding transfers of survivorship marital property, such as the North homestead here. Relying on the doctrine of *expressio unius est exclusio alterius*, he argues that the legislature's failure to make this specification in § 766.60 reflects an intent that ch. 854 not be applied to § 766.60.[6] We reject this argument.

¶16 First, in making this argument, Sterling largely ignores the language from the statutory exception on which he relies. As pertinent here, the exception in WIS. STAT. § 854.03(5)(am)7. states that the 120-hour rule does not apply if a separate governing "statute … specifies that [§ 854.03] … does not apply." The statute upon which Sterling relies, WIS. STAT. § 766.60, does not "specif[y]" that § 854.03 "does not apply" so as to invoke the exception under § 854.03(5)(am)7. Because this exception requires that § 766.60 contain specific language stating that ch. 854 does *not* apply, an implied exclusion under the doctrine of *expressio unius* is not sufficient to invoke this exception.

---

[6] Under the doctrine of *expressio unius est exclusion alterius*, "'express mention of one matter excludes other similar matters [that are] not mentioned.'" **James v. Heinrich**, 2021 WI 58, ¶18, 397 Wis. 2d 517, 960 N.W.2d 350 (alteration in original) (quoting **FAS, LLC v. Town of Bass Lake**, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287).

¶17    Moreover, the *expressio unius* doctrine

> is a mere rule of statutory construction to be applied, or not, in determining the legislative intent, according to circumstances.… It has no application except to aid in solving uncertainty and where there is such uncertainty it will aid very much or very little or not at all in solving it, according to the situation dealt with. It should never be applied so as to defeat a plain legislative purpose.

***State ex rel. City of West Allis v. Milwaukee Light, Heat & Traction Co.***, 166 Wis. 178, 164 N.W. 837, 839 (1917). Here, the legislative purpose of the 120-hour rule is clear, and the *expressio unius* doctrine should not be "applied so as to defeat a plain legislative purpose." *See **id.*** That legislative purpose is clearly expressed in multiple statutes that state that the 120-hour rule applies to transfers of survivorship marital property under WIS. STAT. § 766.60. As noted, the 120-hour rule in WIS. STAT. § 854.03(2) explicitly states that it applies to survivorship marital property. Further, as Donaldson argues, WIS. STAT. § 854.02, which addresses the scope of WIS. STAT. ch. 854, states that "[t]his chapter applies to all statutes and governing instruments that transfer property at death." Because § 766.60 is a statute that allows for the transfer of property at death, the 120-hour rule in ch. 854 applies. Finally, as previously mentioned, even the exception on which Sterling relies, § 854.03(5)(am)7., makes it clear that the 120-hour rule applies to transfers at death *unless* "[t]he statute or governing instrument *specifies* that this statute, or one similar to it, *does not apply*." (Emphasis added.) For all these reasons, Sterling's reliance on the doctrine of *expressio unius* is unavailing.[7]

---

[7] In support of his position that the 120-hour rule is inapplicable, Sterling raises a new argument in his reply brief based on WIS. STAT. § 705.15(1m)(c). We do not address this argument because Sterling raises it for the first time in his reply brief. *See **State v. Mata***, 230 Wis. 2d 567, 576 n.4, 602 N.W.2d 158 (Ct. App. 1999) (supporting proposition that we generally "do not address issues raised for the first time in a reply brief"). Additionally, Sterling does not

(continued)

¶18 Accordingly, because we reject Sterling's arguments that the exception in either WIS. STAT. § 854.03(5)(am)2. or 7. applies, and because Sterling does not otherwise challenge the circuit court's determination that § 854.03(2) applies to the North homestead, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

appear to have raised this argument before the circuit court, which would constitute an additional reason to reject it. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court are generally treated as forfeited, and supporting the proposition that appellate courts generally do not address forfeited issues).