STATE of Wisconsin, Plaintiff-Respondent,

v.

Jordan John SAMSA, Defendant-Appellant.†

Court of Appeals

*No. 2013AP2535–CR. Submitted on briefs October 7, 2014.*
*—Decided December 16, 2014.*

**2015 WI App 6**

(Also reported in 859 N.W.2d 149.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Grunder*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Christine A. Remington*, assistant attorney general.

Before Hoover, P.J., Stark and Hruz, JJ.

¶ 1. HOOVER, P.J. Jordan Samsa appeals a judgment of conviction for third-degree sexual assault and an order denying his postconviction motion. Samsa seeks resentencing or, alternatively, sentence modification. He argues that the circuit court erroneously interpreted and applied the criminogenic-needs portion of a COMPAS assessment and that accurate information concerning COMPAS constitutes a new factor for sentencing purposes.[1] We reject Samsa's arguments and affirm.

## BACKGROUND

¶ 2. According to the criminal complaint, A.N., then fourteen years old, reported she had been sexually assaulted by Samsa. Samsa had been dating A.N.'s older sister and living with A.N.'s family for approximately five months. Samsa told police he and A.N. had consensual sexual intercourse for approximately one minute on one occasion.

¶ 3. Samsa ultimately entered a no-contest plea to one count of third-degree sexual assault. The parties jointly recommended a presentence investigation (PSI), but remained free to argue the sentence. The Department of Corrections' PSI recommended withholding sentence and imposing five years of probation with one year in jail as a condition. The State requested four years of initial confinement followed by four years of extended supervision. The defense joined in the PSI's recommendation for probation and conditional jail time.

---

[1] COMPAS stands for "Correctional Offender Management Profiling for Alternative Sanctions."

¶ 4. The court discussed the nature of the crime, finding it aggravated due to the impact on A.N. and her family, as well as the trusting relationship between Samsa and the family prior to the assault. Regarding Samsa's character, the court observed Samsa had no prior criminal record, although he had been cited for marijuana and paraphernalia possession. The court also noted Samsa had some mild cognitive limitations, potentially arising from lead exposure. The court agreed with the PSI writer and the State that Samsa failed to take responsibility for his actions.

¶ 5. The court next discussed the "Criminogenic Need" section of the COMPAS report that was appended to the PSI. The court explained:

Final factor is needs of society and we do have this COMPAS Assessment now. And, frankly, I am at a loss to figure out this agent's recommendation. I look at the chart here and current violence is listed as high under relationships and lifestyle. Criminal opportunity, highly probable, and this is for a criminogenic needs type of thing. Leisure and recreation, highly probable. Substance abuse, probable. Criminal associates and peers, probable. Under personality, criminal personality, highly probable. Family criminality, highly probable. Under vocation and education, highly probable. Under residential instability, highly probable.

I mean, there's a number of these that are on the low side as well like history of violence, history of noncompliance, criminal involvement, but everything associated with this is off the charts, but yet the agent is recommending probation. And I just—I disagree. I think that you are a poor risk and I think you are going to take advantage of any opportunity that you have to satisfy whatever need you might have at the particular time. And if it's . . . sexual intercourse that you want with someone and if you're in a position that you can do

it and you don't think you're going to get caught, you're going to go ahead and do it.

The court imposed the maximum sentence of five years' initial confinement and five years' extended supervision.

¶ 6. Samsa moved for postconviction relief, arguing the criminogenic-needs section of the COMPAS identifies areas in which the offender needs correctional or community intervention, and is not intended to be an indicator of danger to the community. The court denied Samsa's motion following a hearing. Samsa appeals.

## DISCUSSION

¶ 7. Samsa renews the arguments presented in his postconviction motion, both of which rely on the underlying premise that the circuit court misapplied the criminogenic-needs section of the COMPAS assessment. Samsa seeks resentencing based on the court's alleged misapplication of the COMPAS or, alternatively, sentence modification because correct information concerning the COMPAS constituted a new sentencing factor.

¶ 8. Samsa primarily argues he is entitled to resentencing due to the circuit court's sentencing error. Sentencing is subject to the court's "great discretion." *State v. Jackson*, 110 Wis. 2d 548, 552, 329 N.W.2d 182 (1983). However, the sentencing court must consider three primary sentencing factors: (1) the gravity of the offense, (2) the character and rehabilitative needs of the offender, and (3) the need for protection of the public. *State v. Gallion*, 2002 WI App 265, ¶ 26, 258 Wis. 2d 473, 654 N.W.2d 446, *aff'd* 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197. Sentencing decisions are generally

accorded a strong presumption of reasonableness because the circuit court is best suited to consider the relevant factors and assess the defendant's demeanor. *Id.* A defendant can rebut the presumption of reasonableness only by showing an unreasonable or unjustifiable basis for the sentence in the record. *Id.*, ¶ 27. A sentencing court erroneously exercises its discretion when it fails to state the relevant and material factors that influenced its decision, relies on immaterial factors, or gives too much weight to one factor in the face of other contravening factors. *Id.* "An improper sentencing factor is a factor that is 'totally irrelevant or immaterial to the type of decision to be made.'" *Id.*, ¶ 16 (quoting *Elias v. State*, 93 Wis. 2d 278, 282, 286 N.W.2d 559 (1980)).

¶ 9. Samsa argues the court relied on an improper factor by using criminogenic needs to assess his dangerousness. He asserts that because the criminogenic-needs section of the COMPAS was not intended to assess dangerousness, the court improperly inferred he was more dangerous than the COMPAS risk assessment indicated.

¶ 10. In support of Samsa's postconviction motion, he filed a five-page, single-spaced report that described the basic principles of the COMPAS assessment.[2] The following summary prefaced the report:

> The COMPAS is a Risk and Needs Assessment tool utilized by the Wisconsin Department of Corrections as a means to identify an offender's risk as well as his or her treatment and programming needs. Risk levels (Low, Medium, or High) are meant to assist corrections professionals in deciding the level of supervision an

[2] The report's author notes the information was derived from training materials provided by COMPAS's creators and the Wisconsin Department of Corrections.

offender requires. The [criminogenic] Needs scales are designed to highlight areas in which the offender may need correctional services (i.e. treatment and programming). By only looking at the Needs scales, without considering the Risk level, an inaccurate interpretation of the individual's risk can be made. Mr. Samsa's COMPAS assessment revealed that there are several areas in which he needs programming. However, his actuarial risk of reoffense was determined to be low, suggesting that services be provided at a low level of supervision. Without training on the COMPAS assessment, it would be easy to misinterpret the results, which are often displayed in bar chart form. The following is a brief description of the basic principles behind the COMPAS assessment and its interpretation.

¶ 11. Samsa asserts the court could not permissibly rely on the COMPAS need assessment scores to determine he was a high risk despite the COMPAS assessment that he presented a low risk of reoffense. We disagree. Samsa's argument is essentially that a sentencing court's discretion must yield to the COMPAS actuarial assessment. That is an untenable position.

¶ 12. At sentencing, the circuit court addressed the requisite sentencing objectives and also explained it disagreed with the COMPAS's and DOC agent's risk assessment. At the postconviction hearing, the court observed it had reviewed its sentencing comments and explained:

[O]ut of the 9 or 10 pages of the Court's reasoning I think I spent about one page on this COMPAS assessment. And I think basically what happened here is that the Court rejected the . . . agent's assessment and the COMPAS assessment that . . . Samsa was a low risk. The Court determined that under all of the circumstances that exist here he's a higher risk than that. In the Court's experience these high treatment needs [are]

what increases a person's risk. And you've got a number of treatment needs that were identified here.

And even the prologue, if you will, . . . of the presentence report, a couple different things. . . . [I]t says the COMPAS assessment does not, however, attempt to predict specifically the likelihood that an offender will commit a certain kind of offense within the same two-year period. For that prediction, an alternative screening which is normed specifically for that offender population, that is use of screeners such as the STATIC 99, VASOR, et cetera, for sex offenders should be used.

Well, . . . they didn't do that.

And then the next paragraph reads as follows: In addition to identifying general levels of risk to re-offend, COMPAS also identifies criminogenic needs specific to that offender which are most likely to affect future criminal behavior.

So when you've got it saying that, to me it's pointing at . . . these needs and that is exactly what this should be used for. If you have these high needs, you can use that to determine and attempt to predict criminal behavior.

It goes on: For purposes of Evidence Based Sentencing, actuarial assessment tools are especially relevant to identify offenders who should be targeted for interventions, identify dynamic risk factors to target with conditions of supervision. It is important to remember that risk scores are not intended to determine the severity of the sentence or whether an offender is incarcerated.

But again, you know, . . . if you have these things, it helps the Court determine whether or not they are likely—it's likely to affect future criminal behavior.

And like I say, the Court rejected the conclusions that were reached through the COMPAS screening I sup-

589

pose for a number of reasons, including that by themselves they're indicating that it's not even using the right test and the Court's assessment of Mr. Samsa, which is reflected in the sentencing transcript.

. . . .

So I believe that the Court has appropriately considered the factors that it has to consider. I rejected the COMPAS conclusion and I've stated my reasons for that[.]

¶ 13. Samsa's risk of violent or nonviolent reoffense was determined to be low by the COMPAS assessment. However, the circuit court ultimately rejected that conclusion, and it was perfectly within the court's discretion to do so. The COMPAS is merely one tool available to a court at the time of sentencing and a court is free to rely on portions of the assessment while rejecting other portions. Samsa's assertion that a sentencing court should be prohibited from considering criminogenic needs when assessing a defendant's risk of reoffense runs contrary to the principle that sentencing courts are afforded substantial discretion. *See Gallion*, 258 Wis. 2d 473, ¶ 26.

¶ 14. Samsa alternatively argues that the COMPAS information presented in the report he filed with his postconviction motion constituted a new factor justifying sentence modification. The defendant bears the burden of establishing the existence of a new factor by clear and convincing evidence. *State v. Harbor*, 2011 WI 28, ¶ 36, 333 Wis. 2d 53, 797 N.W.2d 828. Whether a new factor exists presents a question of law subject to de novo review. *State v. Scaccio*, 2000 WI App 265, ¶ 13, 240 Wis. 2d 95, 622 N.W.2d 449. "A defendant must demonstrate both the existence of a new factor and that

the new factor justifies modification of the sentence."
*Harbor*, 333 Wis. 2d 53, ¶ 38. "[I]f a court determines
that the facts do not constitute a new factor as a matter
of law, it need go no further in its analysis[.]" (quotation
omitted). *Id.* **A new factor is:**

> [A] fact or set of facts highly relevant to the imposition
> of sentence, but not known to the trial judge at the time
> of original sentencing, either because it was not then in
> existence or because, even though it was then in
> existence, it was unknowingly overlooked by all of the
> parties.

*Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69
(1975).

██ ██

¶ 15. We have already concluded the circuit court
did not err in its interpretation or application of the
COMPAS report. Samsa has failed to demonstrate the
supplemental information about the COMPAS report
constitutes a new factor. At the time of sentencing, the
court was aware of the distinction between crimino-
genic needs and risk assessments. Further, because the
court did not err in its use of the COMPAS assessment,
the supplemental information would not justify sen-
tence modification.

*By the Court.*—Judgment and order affirmed.