PER CURIAM.
¶1 Norman Gibson appeals a judgment of conviction for repeated sexual assault of a child. Gibson also appeals the denial of his post-conviction motion for resentencing. Gibson argues that the circuit court relied on improper factors when it sentenced him. Gibson also argues that his sentence is cruel and unusual due to his serious health conditions. We reject Gibson's arguments and affirm.
BACKGROUND
¶2 Gibson was charged with one count of repeated sexual assault of a child and two counts of incest with a child by a stepparent, based on a four-year course of sexual assaults victimizing his stepdaughter. Gibson pled guilty to the repeated sexual assault count and was sentenced to twenty years of initial confinement and ten years of extended supervision. Gibson filed a post-conviction motion in which he argued that the sentencing court relied on improper factors. Gibson also argued that his sentence amounted to cruel and unusual punishment in violation of the Wisconsin and U.S. constitutions. The circuit court denied this post-conviction motion without a hearing. Gibson appeals.
DISCUSSION
¶3 We start with Gibson's argument that the circuit court relied on improper factors when it sentenced him.
¶4 "Circuit courts are required to specify the objectives of the sentence on the record. These objectives include, but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." State v. Gallion , 2004 WI 42, ¶40, 270 Wis. 2d 535, 678 N.W.2d 197. Courts must also describe, on the record, the facts relevant to the objectives. See id. , ¶42. In addition to these objectives, a court may consider other factors that it deems relevant. See State v. Harris , 119 Wis. 2d 612, 623-24, 350 N.W.2d 633 (1984) (factors for consideration include past record of criminal offenses; history of undesirable behavior pattern; the defendant's personality, character and social traits; degree of the defendant's culpability; defendant's remorse, repentance and cooperativeness; defendant's need for close rehabilitative control; and the rights of the public).
¶5 However, the circuit court may not consider improper factors. " 'An improper sentencing factor is a factor that is totally irrelevant or immaterial to the type of decision to be made.' " State v. Samsa , 2015 WI App 6, ¶8, 359 Wis. 2d 580, 859 N.W.2d 149 (quoted source omitted). A defendant seeking sentencing relief must show by clear and convincing evidence that the circuit court relied on improper factors. State v. Loomis , 2016 WI 68, ¶31, 371 Wis. 2d 235, 881 N.W.2d 749.
¶6 Gibson argues that the circuit court improperly considered the fact that Gibson had previously received a relatively lenient sentence for a 1998 sexual assault in Illinois. Gibson points to the circuit court's comment that, in releasing Gibson to probation after nine months in jail, the state of Illinois had handled the prior case "totally inappropriately." Based on this comment, Gibson argues that the circuit court decided to sentence him harshly in this case in order to compensate for the previous inadequate punishment in Illinois, thereby violating the double jeopardy clause. See State v. Alexander , 2015 WI 6, ¶23, 360 Wis. 2d 292, 858 N.W.2d 662 (courts should not sentence defendants in a way that violates their constitutional rights).
¶7 We disagree that Gibson's argument represents a fair reading of the circuit court's comments at sentencing. The circuit court explained that Gibson's prior sexual assault in Illinois was "very similar" to the present case, and involved "much of the same type of conduct." The court expressed concern about the manner in which Illinois had handled the first case, explaining that the earlier sentence allowed Gibson to end up in Wisconsin where another young victim "suffered immeasurably because of that." Viewing the court's comments as a whole, it is clear to us that the court's reference to the 1998 sexual assault sentence reflected a proper consideration of the Gallion objectives for sentencing, and helped to satisfy the court's obligation to identify the specific facts that are relevant to these objectives. See Gallion , 270 Wis. 2d 535, ¶42 ("Courts are to describe the facts relevant to [the sentencing] objectives."). In particular, it was permissible for the sentencing court to consider Gibson's prior conviction and sentence to be relevant to the need to protect the public, reasoning that a lenient prior sentence was not sufficient to prevent or deter Gibson from committing strikingly similar offenses against another young victim.
¶8 Gibson also argues that the court improperly considered the fact that the victim's mother had (presumably) not suffered any consequences for her role in the sexual assaults. Gibson points out that the court found the involvement of the victim's mother "disturbing" and stated that the mother "should be in front of a different court for what she did in this case." Based on these comments, Gibson argues that his harsh sentence reflected the court's desire to punish Gibson for what the victim's mother had done and failed to do.
¶9 Again, we disagree that Gibson's argument reflects a fair reading of the sentencing transcript. The circuit court made its comments about the victim's mother in the context of addressing Gibson's pattern of minimizing responsibility and blaming others. Specifically, the court pointed to Gibson's comments in the presentence investigation report (PSI), where he complained, "[W]hat gets me in all this, is her mother said she gave me permission to have sex with JMF, but nothing became of that."[1] The court expressed the view that JMF's mother was also deserving of accountability for her actions, but found it significant that Gibson had similarly sought to deflect blame in the 1998 case. The court concluded that Gibson's pattern of minimization and denial of responsibility was "disturbing." See Harris , 119 Wis. 2d at 623-24 (a defendant's history of undesirable behavior patterns and degree of remorse are proper factors for a court to consider at sentencing). Because the transcript shows that the circuit court was focused on Gibson's failure to accept responsibility, we see nothing improper in the court's comments about the victim's mother.
¶10 For these reasons, we reject Gibson's arguments that the circuit court considered improper factors when it sentenced him.
¶11 We now turn to Gibson's argument that his sentence is cruel and unusual in violation of the state and federal constitutions. Pointing to numerous and serious alleged health conditions, Gibson argues that a sentence that includes twenty years of initial confinement means that he will likely live out the remainder of his life in a prison that does not adequately deal with his medical conditions. Gibson further contends that "the circumstances of his deteriorating health and the treatment he is receiving while confined make his twenty-year term of initial confinement shocking to public sentiment."
¶12 We may reject a sentence as cruel and unusual only if " 'the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.' " State v. Pal , 2017 WI 44, ¶30, 374 Wis. 2d 759, 893 N.W.2d 848 (quoted source omitted).
¶13 Here, Gibson argues that his deteriorating medical condition needs to be taken into account in evaluating whether his sentence is cruel and unusual. We see two problems with this argument. First, Gibson has failed to develop this argument with citations to relevant legal authority. We could reject his argument for this reason alone. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to review arguments unsupported by references to legal authority).
¶14 Second, the transcript shows that the sentencing court took Gibson's health issues into account when it imposed its sentence. Gibson's conditions were discussed in the PSI, and Gibson's attorney also addressed them at sentencing, explaining that Gibson's health was not going to improve and could worsen. The court noted that Gibson's health issues were likely the key factor in the PSI's relatively lenient recommendation of ten years of initial confinement, given the gravity of the offenses Gibson committed. However, as the circuit court explained when denying Gibson's post-conviction motion, the court rejected this relatively lenient recommendation based on its determination that "the fact that the defendant has serious health issues does not outweigh the gravity of the offense." The gravity of the offense is a proper consideration in determining whether a sentence is cruel and unusual. See State v. Ninham , 2011 WI 33, ¶86, 333 Wis. 2d 335, 797 N.W.2d 451 (considering the "horrific and senseless" nature of the offense in determining that the defendant's sentence was not disproportionate to the crime); State v. Lindsey , 203 Wis. 2d 423, 435-37, 554 N.W.2d 215 (Ct. App. 1996) (considering the gravity of the offense in evaluating whether a defendant's sentence was grossly disproportionate to the crime). The court supported its view that the offenses here were especially grave. We therefore see no basis for concluding that Gibson's sentence is cruel and unusual.
¶15 Finally, Gibson argues that the circuit court erred in rejecting his Eighth Amendment claim without an evidentiary hearing. See State v. Allen , 2004 WI 106, ¶23, 274 Wis. 2d 568, 682 N.W.2d 433 (a post-conviction motion must include "sufficient material facts for reviewing courts to meaningfully assess a defendant's claim"). Specifically, Gibson argues that he should have been given the opportunity to present evidence regarding his deteriorating condition and his medical treatment.
¶16 We disagree that Gibson's post-conviction motion required the court to conduct an evidentiary hearing on these issues. In order to be entitled to a hearing, the court must be presented with "facts that are material to the issue presented to the court." Id. , ¶22 (emphasis in original). However, Gibson has not pointed to any legal authority to suggest that a post-sentence deterioration in the defendant's health is material to whether a sentence is cruel and unusual. In addition, as discussed above, the circuit court was aware that the defendant's health could deteriorate at the time it sentenced him. In the absence of any pertinent legal authority, we see no basis for requiring an evidentiary hearing for issues that were already fully considered at sentencing.
CONCLUSION
¶17 For the foregoing reasons, we affirm the judgment of conviction and the order denying post-conviction relief.
By the Court .-Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

Gibson contends that he "later abandoned" these comments by accepting responsibility during his allocution. However, the circuit court did not take the same positive view of the defendant's remarks, considered as a whole. The circuit court explained that it was "happy to hear that the defendant is not trying to say that he's innocent [and] that he's accepting some responsibility here." Nonetheless, the court viewed Gibson's remarks as "an Eleventh-Hour acceptance" in the face of many quotes in the PSI that indicated that Gibson was not remorseful and was still deflecting blame.