COURT OF APPEALS
DECISION
DATED AND FILED

January 7, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2094-CR**

Cir. Ct. No. **2015CF1080**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KEVIN A. TAYLOR,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI and PEDRO COLON, Judges. *Affirmed.*

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Kevin A. Taylor appeals a judgment entered after he pled guilty to second-degree recklessly endangering safety as a repeat offender and causing soft tissue injury to a police officer while resisting the officer.  He also appeals an order denying postconviction relief.[1]  He alleges that the circuit court sentenced him based on an improper factor, namely, his challenge to restitution.  He seeks resentencing.  We reject his contentions and affirm.

**Background**

¶2     According to the criminal complaint, M.N., a City of Greenfield police officer, was on patrol in a marked squad car early on the morning of March 7, 2015.  At approximately 2:15 a.m., he approached a vehicle idling in the parking lot of a closed Greenfield business and made contact with the driver.  M.N. smelled marijuana and directed the driver, subsequently identified as Taylor, to remain in his vehicle.  Taylor, however, began opening and closing the driver's-side door.  M.N. called for backup from additional officers.  As events unfolded, Taylor started driving, which "forced [M.N.] to jump into [Taylor's] vehicle to avoid being run over," and Taylor then drove his vehicle into M.N.'s squad car.

¶3     M.N. struggled with Taylor inside his vehicle and eventually arrested him.  M.N. sustained a cut to his face and abrasions to his leg and was conveyed to a hospital for treatment.  A search of Taylor's vehicle incident to the arrest uncovered several grams of cocaine.  The State charged Taylor with

---

[1] The Honorable David L. Borowski presided over the original sentencing and entered the judgment of conviction.  The Honorable Pedro Colon presided over the postconviction proceedings and entered the order denying postconviction relief.

2

possession of cocaine, causing soft tissue injury to an officer while resisting the officer, and second-degree recklessly endangering safety as a repeat offender.

¶4    To support the claim that Taylor was a repeat offender, the State alleged that Taylor had a prior conviction for second-degree recklessly endangering safety, and the State attached to the complaint in the instant matter a copy of a 2013 criminal complaint filed in Fond du Lac County. According to the 2013 complaint, Taylor fled from a traffic officer and led police on a high speed chase. When he finally stopped his vehicle, an officer approached Taylor's vehicle on foot. The officer's arms were "in the driver's door" when Taylor accelerated, dragging the officer some distance before the officer eventually fell onto the roadway within inches of the vehicle's tires. Taylor subsequently abandoned his vehicle in a snowbank. When police searched the vehicle, they found twenty grams of marijuana.

¶5    In March 2016, Taylor decided to resolve the charges in the instant case with a plea agreement. Pursuant to its terms, he pled guilty to second-degree recklessly endangering safety as a repeat offender and to causing soft tissue damage to an officer while resisting the officer. The State agreed to recommend a global disposition of one and one-half years of initial confinement and four and one-half years of extended supervision. The State also moved to dismiss and read in the charge of possessing cocaine. The matters proceeded to sentencing.

¶6    At the outset of the sentencing hearing, the parties advised the circuit court that Taylor disputed the $1542.10 claimed as restitution for damages to the Greenfield squad car, and the State presented testimony from the Greenfield assistant police chief to establish the reasonableness of the claim. Taylor's cross-

examination was brief, focusing on why certain components of the squad car needed to be replaced rather than repaired.[2]

¶7     Following the assistant police chief's testimony, the State made the promised sentencing recommendation. In support, the State emphasized that Taylor's actions were dangerous and placed an officer at risk. Turning to restitution, the State requested an amount necessary to satisfy M.N.'s medical costs and the $1542.10 for squad car repairs.[3]

¶8     Taylor declined to address the circuit court personally, but his defense counsel spoke on his behalf, noting Taylor's youth, employment history, and efforts toward completing a high school education. Defense counsel also acknowledged that Taylor was on supervision for his conviction in Fond du Lac County when he committed the crimes in this case and conceded that a prison sentence was warranted. Defense counsel recommended a global sentence of thirteen or fourteen months of initial confinement and twenty-four months of extended supervision. As to restitution, defense counsel advised that Taylor disputed the reasonableness of replacing rather than repairing the squad car's push bar. Defense counsel therefore proposed that the restitution award exclude that $476.90 replacement cost.

---

[2] The State asserts in its statement of the case that Taylor's trial counsel "had no questions" for the assistant police chief. That assertion is inaccurate. We remind counsel of the importance of correctly describing the facts of record.

[3] In postconviction proceedings, the circuit court reduced the amount of restitution awarded as compensation for medical costs. Restitution for medical costs is not at issue in this appeal.

¶9     The circuit court began its remarks by finding that the facts in the instant case were "very similar" to those underlying Taylor's conviction for recklessly endangering safety in Fond du Lac County, and the circuit court noted that Taylor was serving a term of community supervision for that "borderline identical" case at the time he committed the instant crimes. The circuit court concluded that Taylor had "no respect for authority, no respect ... for police."

¶10     The circuit court next took into account that Taylor failed to comply with the terms of his bond while the instant case was pending, finding that he "once again prov[ed] he has no respect for authority, for officers, for judges, for the courts, or for anyone." The circuit court characterized Taylor as a "menace" and a "threat," and then observed:

> [Taylor] sits here shaking his head and rolling his eyes at me as if, "who cares what the judge says,' and '[h]ow can you say that, Judge?' He sits here and forces his attorney to bring in an officer from the Department of Greenfield to squabble over $400 in restitution. That is a sure sign of lack of respect for authority and lack of accountability, lack of apology. There's been no apology in this case, no accountability, no showing of remorse whatsoever.

¶11     The circuit court next found that Taylor had caused "significant damage" to property and that M.N. incurred substantial medical costs for hospital treatment and x-rays. The circuit court concluded that Taylor had created "a very, very dangerous situation."

¶12     Turning to mitigating factors, the circuit court gave Taylor credit for pleading guilty and acknowledged his "sporadic" work history, which the circuit court viewed as "somewhat positive." The circuit court reiterated, however, that Taylor had committed multiple crimes in this case "while he's on supervision for almost an exactly similar case, another case involving an officer, another case

5

involving recklessly endangering safety, another case involving some version, technical or otherwise, of fleeing and having no respect for authority."

¶13    The circuit court next determined that Taylor "needs to be punished. He needs to be incarcerated," and the circuit court expressed the hope that Taylor would "mature and stop breaking the law." The circuit court went on:

> Hopefully, the D[epartment] o[f] C[orrections] and his time in custody can have some effect on Mr. Taylor, who, again, shows no remorse; if anything, shows disdain as he sits here for the entire process, squabbles over $400 in restitution[,] some of which will be [covered] by the bail .... But restitution he'll certainly have to pay.
>
> For someone that now is on his second serious felony at the age of [twenty-three], multiple criminal contacts, multiple criminal convictions, injures a police officer, shows no remorse whatsoever, which is a negative, squabbles over restitution. When you're go[ing to] have a total restitution in the thousands of dollars he's worried about $400 and whether or not the push bar for the squad needed to be replaced or ... whether we can just touch it up with paint, preposterous. And it speaks to Mr. Taylor's utter lack of character, utter lack of empathy. Utter lack of maturity.

¶14    The circuit court then pronounced sentence, imposing an evenly bifurcated six-year term of imprisonment for second-degree reckless endangerment as a repeat offender and a consecutive, evenly bifurcated two-year term for causing injury to an officer while resisting the officer. The circuit court recognized that it had imposed a longer sentence than the State recommended but the circuit court found that Taylor "needs more punishment. He needs more time behind bars." The circuit court explained:

> I'm not go[ing to] let him injure an officer and think it's a joke, which is where this matter currently stands.... He's an utter danger to the community. He's running rampant in Greenfield and Fond du Lac and Milwaukee County, terrorizing neighborhoods, potentially, but certainly

6

> terrorizing police officers who he has no problem literally running over or running into with squad cars. If anything, I've considered more time than this.

¶15    Taylor moved for postconviction relief. As relevant here, he sought resentencing on the ground that he was sentenced "based on an improper factor, namely, his challenge to the State's restitution claim." The postconviction court denied the motion without a hearing, finding that the sentencing court considered Taylor's challenge to restitution only "as [that challenge] related to his character and lack of remorse for his actions." The postconviction court therefore concluded that Taylor was not sentenced on the basis of an improper factor. Taylor appeals.

## Discussion

¶16    Sentencing rests in the circuit court's sound discretion. *See State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. A circuit court's exercise of sentencing discretion must include consideration of three primary factors, specifically, "the gravity of the offense, the character of the defendant, and the need to protect the public." *State v. Ziegler*, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76. A circuit court may also consider a wide range of additional factors, including the defendant's "remorse, repentance, and cooperativeness." *See Gallion*, 270 Wis. 2d 535, ¶43 & n.11. We afford sentencing decisions "a strong presumption of reasonableness because the circuit court is best suited to consider the relevant factors and assess the defendant's demeanor. A defendant can rebut the presumption of reasonableness only by showing an unreasonable or unjustifiable basis for the sentence in the record." *See State v. Samsa*, 2015 WI App 6, ¶8, 359 Wis. 2d 580, 859 N.W.2d 149 (internal citation omitted).

¶17    A defendant who seeks resentencing on the ground that the circuit court considered an improper factor must shoulder the heavy burden of proving by clear and convincing evidence that:  (1) the factor was in fact improper;  and (2) the circuit court actually relied upon the improper factor.  *See* **State v. Harris**, 2010 WI 79, ¶¶31-32, 34, 326 Wis. 2d 685, 786 N.W.2d 409.  To prove that a sentencing factor was improper, a defendant must show that it was "totally irrelevant or immaterial to the type of decision to be made."  *See* **Samsa**, 359 Wis. 2d 580, ¶8 (citation omitted).  To prove actual reliance, the defendant must show that "the circuit court paid 'explicit attention' to an improper factor, and ... the improper factor formed the 'basis for the sentence.'"  **State v. Williams**, 2018 WI 59, ¶52, 381 Wis. 2d 661, 912 N.W.2d 373 (citation omitted).  On appeal, we independently review the sentencing transcript as a whole and assess the allegedly improper comments in context.  *See **id.***  We then determine whether the evidence is clear and convincing that the circuit court actually relied upon an improper factor in fashioning the sentence.  *See* **Harris**, 326 Wis. 2d 685, ¶¶35, 45.  Evidence is clear and convincing when the thing to be proved is shown to be "'highly probable or reasonably certain.'"  *See **id.***, ¶35 (citation omitted).  With the foregoing in mind, we turn to Taylor's claim.

¶18    According to Taylor, "the circuit court's consideration of [his] restitution challenge constituted an improper factor for sentencing."  His claim is bottomed on the principles that a defendant has a right to challenge a restitution request, and a circuit court may not punish a defendant solely for exercising that right.  *See* **Williams**, 381 Wis. 2d 661, ¶¶49, 51 & n.15.  The supreme court has made clear, however, that "when the restitution factor is inextricably intertwined with a defendant's character and lack of remorse, its consideration is proper."  ***Id.***, ¶51.  We conclude that the record reflects such proper consideration here.

¶19    The circuit court initially mentioned the challenge to restitution when considering Taylor's courtroom demeanor. The circuit court noted that Taylor was "shaking his head and rolling his eyes" and construed those actions as showing disdain for the circuit court. The circuit court next remarked that Taylor had required his trial counsel to "squabble over $400 in restitution," and found that such an action also reflected a lack of respect for authority. The circuit court then added: "[t]here's been no apology in this case, no accountability, no showing of remorse whatsoever." Thus, as *Williams* permits, the circuit court directly linked Taylor's attitude toward the damages he caused with his hostility to authority and his failure to demonstrate any repentance or regret for his actions.

¶20    Further, the record shows that the circuit court's later references to restitution also reflect the circuit court's view that Taylor's challenge to restitution illuminated Taylor's character. The circuit court was appalled that although Taylor had "injure[d] a police officer" and had caused substantial property damage, he "worried about $400 and whether or not the push bar for the squad needed to be replaced ... or whether we can just touch it up with paint, preposterous." The circuit court then found that Taylor "again, shows no remorse; if anything, shows disdain ... for the entire process, squabbles over $400 in restitution." In the circuit court's view, Taylor's priorities, demeanor, and attitude towards the crimes he committed demonstrated an "utter lack of character, utter lack of empathy. Utter lack of maturity." *Cf. State v. Baldwin*, 101 Wis. 2d 441, 459, 304 N.W.2d 742 (1981) (internal citation omitted) (explaining that a sentencing court has an "obligation to consider factors such as the defendant's demeanor, his need for rehabilitation, and the extent to which the public might be endangered by his being at large. A defendant's attitude toward the crime may well be relevant in considering these things.").

¶21 We are satisfied that the circuit court's remarks about Taylor's challenge to restitution reflect that the circuit court drew a reasonable connection between that challenge and Taylor's character. In context, the remarks show that the circuit court assessed "the restitution factor [a]s inextricably intertwined with [Taylor's] character and lack of remorse." *See Williams*, 381 Wis. 2d 661, ¶51. That assessment rested in the circuit court's discretion. *See id.*, ¶50. Taylor therefore fails to show that restitution was an improper sentencing factor here.

¶22 Moreover, were we to conclude that Taylor's challenge to restitution was an improper factor in this case—and we do not—we would nonetheless hold that Taylor is not entitled to resentencing. Our independent review of the record does not reveal clear and convincing evidence that the circuit court placed actual reliance on the restitution challenge. *Cf. State v. Alexander*, 2015 WI 6, ¶26, 360 Wis. 2d 292, 858 N.W.2d 662 (reflecting that a court may give explicit attention to an improper factor without actually relying on it). In other words, it is neither "highly probable" nor "reasonably certain" that the restitution challenge was the basis for Taylor's sentences. *See Harris*, 326 Wis. 2d 685, ¶35.

¶23 As in *Williams*, the circuit court's remarks reflect that the sentences chosen were based on the gravity of the offenses, the defendant's character, and the need to protect the public. *See id.*, 381 Wis. 2d 661, ¶53. Of those factors, the circuit court particularly emphasized Taylor's character, which the circuit court found was poor "at best" for reasons that it thoroughly explained.

¶24 The circuit court was profoundly concerned that Taylor had committed crimes in this case that were nearly identical to those he committed in 2013, and that he committed his most recent crimes while serving a term of community supervision for the earlier ones. *See State v. Lechner*, 217 Wis. 2d

392, 422, 576 N.W.2d 912 (1998) (past record and history of undesirable behavior patterns are relevant in assessing the defendant's character).  The circuit court also considered Taylor's insolent behavior in the courtroom, which the circuit court viewed as signaling contempt for the judicial process.  *See Samsa*, 359 Wis. 2d 580, ¶8 (reflecting the critical importance of the sentencing court's opportunity to observe the defendant's courtroom demeanor).  Further, the circuit court stressed that Taylor had not offered any apology or otherwise demonstrated remorse for his crimes.  While the circuit court interspersed remarks about Taylor's restitution challenge within the larger discussion, the record shows that the circuit court connected those remarks to its explanations of why it believed Taylor had "no respect for authority, for officers, for judges, for the courts, or anyone."

¶25     As to the gravity of the offenses and the need to protect the public, the circuit court found that Taylor had triggered a "very very dangerous situation" in this case and that his "bad decision making" created an ongoing risk to those around him and a likelihood that he would reoffend in the future.  The crux of the sentencing decision was ultimately the circuit court's finding that Taylor was "an utter danger to the community" because he was "running rampant ... terrorizing police officers who he has no problem literally running over."  The circuit court explained that it would not "let [Taylor] injure an officer and think it's a joke ....  He needs time to mature, and ... at some point become a productive member of society."  Accordingly, the circuit court rejected the parties' sentencing recommendations as insufficient and instead imposed an aggregate evenly bifurcated eight-year term of imprisonment.

¶26     The totality of the sentencing remarks do not show that the circuit court vindictively increased Taylor's punishment because Taylor challenged the restitution request.  Although the circuit court discussed his challenge, the

discussion "bore a reasonable nexus to the relevant factor[s] of [his] lack of remorse," *see **Williams***, 381 Wis. 2d 661, ¶53, and his character, specifically, the attitude towards authority that he exhibited in his crimes and in the courtroom. The basis for the aggregate term of imprisonment was thus the circuit court's assessment of the primary sentencing factors, coupled with Taylor's courtroom demeanor and lack of remorse. We are therefore satisfied that the sentences in this case were based on appropriate sentencing factors. Because Taylor fails to show that the circuit court increased his sentences solely because he challenged restitution, he fails to establish actual reliance on an improper factor. *See **id.***

¶27 The parties end their briefs by discussing whether the circuit court's reliance on an improper factor at sentencing constituted harmless error. In light of our conclusion that the circuit court did not err, we need not address this issue.[4] For all the foregoing reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[4] We are mindful of the circuit court's many duties at sentencing, and we have concluded that the circuit court properly fulfilled its duties here. We take this opportunity, however, to remind the circuit court to choose its words with care when imposing sentence to ensure that the defendant fully understands the reasoning underlying the sentencing decision.