# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 4, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP71-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF2471

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LAMONTE L. WASHINGTON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. CONEN and MICHELLE ACKERMAN HAVAS, Judges. *Affirmed.*

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Lamonte L. Washington appeals from a judgment convicting him of one count of child enticement, and an order denying his postconviction motion.[1]  Washington contends that he was sentenced based on an "inaccurate version of the offense" entitling him to a new sentencing hearing.  In the alternative, he requests sentence modification.  For the reasons discussed below, we reject his arguments, and affirm.

## BACKGROUND

¶2    Washington was charged with one count of child enticement.  According to the criminal complaint, on or about April 24, 2017, seventeen-year-old C.S.R. was walking to a friend's house when a man, later identified as Washington, grabbed her from the sidewalk and took her to an alley.  Washington forced her to perform mouth to penis sexual intercourse and penis to vagina sexual intercourse.  Washington then attempted penis to anus sexual intercourse.  C.S.R. described Washington as "[r]amming his penis into her anus resulting in rectal bleeding."  Washington eventually hit his penis against C.S.R.'s anus and ejaculated on the side of a garage.

¶3    Washington's version of the incident differed.  Washington told police that he offered C.S.R. $20 for mouth to penis sexual intercourse, they walked into the alley, she performed mouth to penis sexual intercourse, and he ran away without paying.  He denied having any other type of sexual intercourse with her.

---

[1]  The Honorable Jeffrey A. Conen presided over the sentencing proceedings in this case.  The Honorable Michelle A. Havas decided the postconviction motion.  We refer to Judge Conen as the circuit court and Judge Havas as the postconviction court.

¶4 Washington entered a plea to child enticement as charged. During the plea colloquy, the circuit court inquired as to whether the facts in the complaint were true. *See* WIS. STAT. § 971.08(1)(b) (2019-20).[2] Washington's attorney stated that there were "some factual discrepancies" between what C.S.R. said and Washington's version of the incident, and asked the circuit court to rely on Washington's version in the complaint for the factual basis. The circuit court then conducted a colloquy with Washington to confirm that his version satisfied the elements of child enticement.

¶5 The State agreed that Washington's version of the incident satisfied the factual basis requirement, but indicated that it would argue C.S.R.'s version of the incident at sentencing. The circuit court advised Washington that at sentencing it would "not be limited" to Washington's version of the incident, the State could argue C.S.R.'s version, and C.S.R. or a parent or a guardian could also address the court. Washington confirmed that he understood, did not have any questions, and still wanted to enter a plea.

¶6 On the original date of sentencing, the prosecutor indicated that C.S.R., her mother, and her grandmother had submitted letters. C.S.R.'s letter requested that the circuit court give Washington the "full time in jail because I didn't deserve what he did to me[.]" The letter stated that Washington "attacked me on the ground and dunked me on the ground and dragged me on the ground into a[n] alley and raped me."

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶7 Pursuant to the plea agreement, the State recommended a sentence of three to five years of initial confinement and seven years of extended supervision, leaving whether the sentence should run consecutive or concurrent to a revocation sentence up to the court. The State then described C.S.R.'s version of the incident to the court.

¶8 The circuit court, a different judge than the judge who presided over the plea hearing, stated "Whoa, whoa. So this is charged as a child enticement and not a second-degree sexual assault, use of force?" The prosecutor responded that there were "some inconsistencies with regard to the force from some other witnesses," so she determined that the child enticement charge provided "adequate exposure" to the criminal penalties and was consistent with Washington's age and his admission that he took C.S.R. to an alley.[3] The State further indicated that C.S.R. described "rectal bleeding." C.S.R. also went to the hospital, and at the hospital she was "very upset," she had some vomiting, and said she had abdominal pain.

¶9 Washington's attorney defended Washington's account of the incident. During the defense's presentation, the circuit court interrupted to comment that there were sexually-related injuries. In response, Washington's attorney stated that he did not know where the injuries came from. Washington then spoke and denied knowing C.S.R.'s age, stated that he was "not a bad person," that C.S.R. "made it seem a lot worse than [it] actually was," and that he felt "very remorseful."

---

[3] Washington was nineteen years old at the time of the incident.

4

¶10    The circuit court expressed frustration that it was "stuck with sentencing somebody on a wide convergence of stories, one side says this is a forcible rape, which is more serious than most cases that I see here … and the defense says, Oh, it's a prostitution situation gone wrong with a 17 and one month year old person[.]"  The court then stated that "Well, I guess unfortunately for Mr. Washington and unfortunately for [C.S.R.] she suffered injuries, and right now there is no explanation where those injuries came from other than consistent with her story."

¶11    Washington then spoke and questioned C.S.R.'s credibility. Washington's attorney also indicated that the State had not yet produced the sexual assault medical records.  The circuit court then adjourned the sentencing and directed the State to turn over the medical records.

¶12    Subsequently, Washington's attorney withdrew, and a new attorney was appointed to represent him.  At the start of the rescheduled sentencing hearing, successor counsel stated that she had received the medical records, reviewed them, discussed Washington's options with him, and he was prepared to go forward with sentencing.

¶13    The State repeated that its recommendation was for three to five years of initial confinement and seven years of extended supervision, leaving whether the sentence should run concurrent or consecutive to a revocation sentence up to the court.  The State indicated that C.S.R. had an argument with the person that she was staying with and left in the middle of the night to walk to a

friend's house, which "took quite some time to walk there[.]"[4] The State then described C.S.R.'s version of the incident—that there was forced sexual intercourse. The State informed the court that the sexual assault treatment records showed that there were no injuries, but there was some blood in C.S.R.'s anus.

¶14 Washington's attorney asked that the circuit court take into consideration that Washington's plea was to the charge filed, not an amended charge. Washington's attorney next challenged C.S.R.'s credibility. In particular, Washington's attorney questioned C.S.R.'s statements to the police that she had called her friend "Lamonte" to tell him that she needed to come over because of a fight that she was having with her cousin. Washington's attorney indicated that she did not know why C.S.R. used Washington's first name as there was no indication they knew each other.[5]

¶15 Washington's attorney also pointed out that the individuals who saw C.S.R. after the incident "didn't believe her story," C.S.R. "didn't appear to have been assaulted," C.S.R. "wasn't acting as though she had been assaulted," and that C.S.R. was not dressed appropriately to walk halfway across the city. Washington's attorney stated that Washington did not dispute that he had penis to mouth intercourse with C.S.R., but his position was that it was for the purpose of paying her for sex and that he ran away without paying. Washington's attorney stated that while there was "a bit of blood in her anus," there were not any injuries consistent with "a situation that was described as 'ramming.'"

---

[4] At the original sentencing hearing, the State indicated that C.S.R. had left for her friend's house at 2:00 a.m. and the police determined that the walk would have taken approximately an hour and a half to complete.

[5] Based on the police reports, it appears that C.S.R.'s friend's real name was Rodney.

¶16 During his allocution, Washington stated that he was not a violent person, it is "kind of a messed up case," he had never been "in this type of situation before," and he hoped that the court would "take both sides into consideration … and move forward."

¶17 The circuit court imposed a sentence under the maximum penalty— ten years of initial confinement and five years of extended supervision.[6] The court ordered the sentence to run consecutive to Washington's revocation "due to the fact that he was on supervision at the time" and "concurrent time would unduly depreciate the seriousness of this offense." The court also ordered lifetime sex offender registration. In its sentencing remarks, the circuit court acknowledged that "there may be some proof problem issues here," but stated that the case "is extremely serious."

¶18 Washington filed a postconviction motion. He argued that he was entitled to resentencing because the circuit court "relied on an inaccurate version of the offense"—C.S.R.'s version. Washington asserted that the circuit court was not told that:

- C.S.R. had a bowel movement before her sexual assault examination which may have been a possible cause of the blood observed in her anus;

- C.S.R.'s reported vomiting, dry-heaving, and abdominal pain may have been caused by eating hot chips "all day";

---

[6] Child enticement is a Class D felony carrying a maximum sentence of twenty-five years of imprisonment, composed of fifteen years of initial confinement and ten years of extended supervision. *See* WIS. STAT. §§ 948.07(3), 973.01(2)(b)4., 973.01(2)(d)3. (2017-18).

7

- C.S.R.'s claim that she undertook a ninety-five minute walk across the city in thirty-six-degree weather because she was annoyed with the cousin she was staying with "did not make sense" given her outfit of a midriff top, sweatpants, a denim jacket with rips in it, and fuzzy sandals, or her friend's report that C.S.R. was warm when she arrived at his home;

- Inconsistencies existed in C.S.R.'s accounts of the incident. For example, C.S.R. first reported that Washington caught up to her in the alley, C.S.R. then said that Washington wrapped his arms around her from behind and walked her into the alley, and later C.S.R. said that he threw her to the ground and dragged her on the ground in the alley. In addition, C.S.R. did not mention that a knife was involved until her sexual assault examination, C.S.R. did not report any injuries consistent with her claims, and there was nothing unusual noted about the state of her clothing or appearance; and,

- C.S.R. was arrested four months after Washington's sentencing for prostitution and ultimately convicted. C.S.R. reported to the police that she had been engaged in prostitution activity since the age of 16. Additionally, C.S.R. did not mention that she had recently been sexually assaulted.

¶19    Washington's motion, however, acknowledged "the difficulty of definitively *proving* that C.S.R.'s version of events is inaccurate." Accordingly,

Washington, in the alternative, argued that the facts supporting his version of the incident constituted a new factor entitling him to sentence modification.[7]

¶20     The postconviction court denied the motion without a hearing. The court found that the facts raised by Washington did not demonstrate that the sentencing court relied on inaccurate information or that a new factor existed warranting modification of the sentence. This appeal follows. Additional relevant facts are addressed below.

## DISCUSSION

¶21     On appeal, Washington first renews his argument that he was sentenced based on inaccurate information.

¶22     "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. To prevail on an inaccurate information claim, a defendant must show that: (1) the information was inaccurate; and (2) the circuit court actually relied on the inaccurate information. *State v. Travis*, 2013 WI 38, ¶21, 347 Wis. 2d 142, 832 N.W.2d 491. If the defendant makes this showing, the burden shifts to the State to prove that the error was harmless. *Id.*, ¶23. "Whether a defendant has been denied this due process right is a constitutional issue that an

---

[7] Washington also requested an unredacted copy of a police report from an unrelated incident involving a male subject and C.S.R. to determine if it contained a false claim of sexual assault by C.S.R. In response, the State asserted that it had reviewed the unredacted report and that C.S.R. was not a victim, but a disclosure witness. Washington does not renew this claim on appeal, and therefore, we conclude that it is abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (stating that "an issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned").

9

appellate court reviews *de novo*." *Tiepelman*, 291 Wis. 2d 179, ¶9 (emphasis added).

¶23    Washington contends that the circuit court adopted an "inaccurate version of the offense" at sentencing by relying on C.S.R.'s version of the incident—that a forcible rape occurred.  Washington, however, has not established here that C.S.R.'s version of the incident was "extensively and materially false." *See Travis*, 347 Wis. 2d 142, ¶18.  None of the information that Washington points to—C.S.R.'s bowel movement before the sexual assault examination, the fact that C.S.R. was eating hot chips "all day," the inconsistencies in her statements, her outfit on the day of the incident, or the fact that she was involved in prostitution—proves by clear and convincing evidence that C.S.R.'s claim that she was forcibly sexually assaulted was "extensively and materially false." *See id.*

¶24    Moreover, as the State observes, Washington's argument essentially asks that we reweigh the evidence and find that his version of the incident is more credible.  It is for the trier of fact, however, to decide what evidence is credible and how any conflicts are to be resolved.  *See State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345; *State v. Pankow*, 144 Wis. 2d 23, 30-31, 422 N.W.2d 913 (Ct. App. 1988).  Here, based on C.S.R.'s statements to the police, Washington's statements to the police, C.S.R.'s letter to the circuit court, and Washington's allocutions, the circuit court could reasonably decide to accept C.S.R.'s version of the incident.  Resolving this conflict is exactly the type of weight and credibility assessment that a circuit court is required to perform.  *See Plesko v. Figgie Int'l*, 190 Wis. 2d 764, 775-76, 528 N.W.2d 446 (Ct. App. 1994).

¶25    Washington additionally renews his argument that he is entitled to sentence modification.   Washington argues that the information alleged in his postconviction motion—especially the information that C.S.R. admitted that she engaged in prostitution as a minor in Milwaukee—constitutes a new factor for the purposes of sentence modification.  Again, we disagree.

¶26    A circuit court may modify a sentence based on a defendant's showing of a "new factor."  *State v. Hegwood*, 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983).  A new factor is

> a fact or set of facts highly relevant to the imposition of sentence, but not known to the [circuit court] at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted).  The defendant bears the burden of establishing the existence of a new factor by clear and convincing evidence.  *Id.*, ¶36.  Whether the facts constitute a new factor is a question of law that we review *de novo*.  *State v. Samsa*, 2015 WI App 6, ¶14, 359 Wis. 2d 580, 859 N.W.2d 149.

¶27    The existence of a new factor alone does not, however, automatically entitle a defendant to sentence modification.  *Harbor*, 333 Wis. 2d 53, ¶37.  Whether a new factor justifies sentence modification is within the circuit court's discretion.  *Id.*  "[I]f the court determines that in the exercise of its discretion, the alleged new factor would not justify sentence modification," it is unnecessary for the court to "determine whether the facts asserted by the defendant constitute a new factor as a matter of law." *Id.*, ¶38.

¶28 To start, some of the information in Washington's postconviction motion was "known" to the circuit court at the time of the sentencing. *See id.*, ¶40; *Samsa*, 359 Wis. 2d 580, ¶15. At sentencing, defense counsel questioned C.S.R.'s use of the name "Lamonte," as there was no indication that she knew Washington. Defense counsel also pointed out that the individuals who saw C.S.R. after the incident "didn't believe her story," C.S.R. "didn't appear to have been assaulted," C.S.R. "wasn't acting as though she had been assaulted," and that C.S.R. was not dressed appropriately to walk halfway across the city. In addition, defense counsel discussed how the sexual assault examination results did not support C.S.R.'s claim of a violent attack. Thus, because this information was presented at the time of sentencing, it does not constitute a new factor. *See Harbor*, 333 Wis. 2d 53, ¶58 (holding that because the circuit court was informed of the facts relating to the defendant's mental health at the time of sentencing, the facts did not constitute a new factor).

¶29 Moreover, in regards to the information that C.S.R. was working as a prostitute, this information was not "highly relevant." *See id.*, ¶40. Even if C.S.R. was working as a prostitute at the time of the offense in this case, the circuit court did not make any findings regarding the circumstances leading up to the sexual assault. Thus, whether C.S.R. was engaging in prostitution was not "highly relevant" to the sentence imposed. Likewise, Washington's suggestion that hot chips caused C.S.R.'s gastric distress is not "highly relevant," as the circuit court did not rely on C.S.R.'s symptoms at the hospital. *See id.*

¶30 Finally, even if we assume that Washington has established a new factor, the circuit court properly exercised its discretion in denying sentence modification. In its decision, the postconviction court explained that:

> [E]ven assuming that the prostitution arrest does qualify as a new factor insofar as it injects uncertainty about the victim's activity at the time of the offense, *it does not shake this court's confidence in her core allegation that this was a forcible sexual assault or justify a modification of the sentence.*

(Emphasis added.)  Thus, the postconviction court reaffirmed the circuit court's decision that Washington had forcibly sexually assaulted C.S.R.  Accordingly, we conclude that the postconviction court properly exercised its discretion in rejecting Washington's request for sentence modification.[8]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] Washington in his reply brief complains that he had a right to an allocution and that the circuit court interrupted and repeatedly mocked him during his allocution.  *See* WIS. STAT. § 972.14(2).  Washington, however, did not develop an argument that his right to allocution was violated in his postconviction motion or in his initial brief.  We do not address arguments raised for the first time on appeal.  *See Apex Elecs. Corp. v. Gee*, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998).